IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ADIDAS AMERICA, INC., an Oregon corporation; and ADIDAS AG, a foreign entity,<br><br>　　　Plaintiffs, Counterclaim-Defendants,<br><br>v.<br><br>THOM BROWNE, INC., a Delaware corporation,<br><br>　　　Defendant, Counterclaim-Plaintiff. | Civil Action No. 1:21-cv-05615-JSR-RWL |

**DEFENDANT THOM BROWNE, INC.'S OPPOSITION TO
ADIDAS'S MOTION TO DISMISS THOM BROWNE'S COUNTERCLAIM AND
STRIKE ITS FIRST, NINTH, AND TWELFTH AFFIRMATIVE DEFENSES**

**TABLE OF CONTENTS**

| | | |
|---|---|---|
| I. | INTRODUCTION ................................................................................................................ | 1 |
| II. | LEGAL STANDARDS ...................................................................................................... | 2 |
| | A. Motion to Dismiss Under Rule 12(b)(6) ............................................................... | 2 |
| | B. Motion to Strike Affirmative Defenses Under Rule 12(f) .................................... | 2 |
| III. | ARGUMENT ..................................................................................................................... | 3 |
| | A. Thom Browne's Counterclaim Is Sufficiently Plead And Does Not Fail As A Matter Of Law | 3 |
| | B. Thom Browne's Affirmative Defenses Are Sufficiently Plead. ........................... | 7 |
| | 1. Thom Browne's First Affirmative Defense (Laches, Acquiescence, and Estoppel) Is Sufficiently Plead. | 9 |
| | 2. Thom Browne's Ninth Affirmative Defense (Unjust Enrichment) Is Sufficiently Plead. | 11 |
| | 3. Thom Browne's Twelfth Affirmative Defense (Aesthetic Functionality) Is Sufficiently Plead. | 12 |
| IV. | CONCLUSION .................................................................................................................. | 13 |

# TABLE OF AUTHORITIES

**CASES**

*Ashcroft v. Iqbal*,
　556 U.S. 662 (2009) ............................................................................................................ 2

*Bell Atl. Corp. v. Twombly*,
　550 U.S. 544 (2007) ......................................................................................................... 2, 3

*Bennett v. Soor Behrins Campbell & Young*,
　124 F.R.D. 562 (S.D.N.Y. 1989) ...................................................................................... 12

*Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*,
　696 F.3d 206 (2d Cir. 2012) ............................................................................................... 3

*Coach, Inc. v. Kmart Corps.*,
　756 F. Supp. 2d 421 (S.D.N.Y. 2010) .............................................................................. 11

*Cognex Corp. v. Microscan Sys., Inc.*,
　990 F.Supp.2d 408 (S.D.N.Y. 2013) ............................................................................ 2, 11

*Cortez v. Stillwell Ready-Mix and Building Materials, L.L.C. et al*,
　2022 WL 137465 (S.D.N.Y. Jan. 13, 2022) ................................................................. 2, 12

*GEOMC Co. v. Calmare Therapeutics Inc.*,
　918 F.3d 92 (2d Cir. 2019) ........................................................................................ 2, 7, 10

*Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*,
　2016 WL 6906583 (S.D.N.Y. Nov. 21, 2016) .................................................................. 11

*Kaye v. Grossman*,
　202 F.3d 611 (2d Cir. 2000) ............................................................................................. 11

*Keystone Global LLC v. Décor Essentials Ltd.*,
　2014 WL 888336 (S.D.N.Y. Mar. 6, 2014) ....................................................................... 3

*LLM Bar Exam, LLC v. Barbri, Inc.*,
　922 F.3d 136 (2d Cir. 2019) ............................................................................................... 2

*Rubik's Brand Ltd. v. Flambeau, Inc.*,
　2021 WL 363704 (S.D.N.Y. Jan. 31, 2021) ....................................................................... 6

*Steven Madden, Ltd. v. Yves Saint Laurent*,
　2019 WL 2023766 (S.D.N.Y. May 8, 2019) ...................................................................... 6

*Tardif v. City of New York*,
　302 F.R.D. 31 (S.D.N.Y. 2014) .......................................................................................... 2

*Villeroy & Boch Keramische Werke K.G. v. THC Sys., Inc.*,
   999 F.2d 619 (2d Cir. 1993) .................................................................................................. 5

*William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*,
   744 F.2d 935 (2d Cir. 1984) .................................................................................................. 3

*Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*,
   2013 WL 247839 (S.D.N.Y. Jan. 22, 2013) ........................................................................... 2

**RULES**

Federal Rule of Civil Procedure 15(a)(1)(A) .................................................................................. 1

Defendant Thom Browne, Inc. ("Thom Browne") respectfully submits this memorandum in opposition to the Motion to Dismiss Thom Browne's Counterclaim and Strike Its First, Ninth, and Twelfth Affirmative Defenses (Dkt. No. 52) filed by Plaintiffs adidas America, Inc. and adidas AG (collectively, "Plaintiffs" or "adidas") ("Motion").

I.  **INTRODUCTION**

Thom Browne's First Amended Answer and Counterclaim (Dkt. 51) ("Amended Answer") contains factual allegations that, on their face, plausibly entitle Thom Browne to the relief it seeks.[1] Plaintiffs' Motion ignores or misrepresents Thom Browne's well-pled facts and misstates the relevant law. Contrary to the suggestion in Plaintiffs' Motion, Thom Brown need not ***prove*** its counterclaim or its affirmative defenses. Rather, Thom Browne need only plead the factual matter required to state the nature of the counterclaim and each affirmative defense to state a plausible claim for relief, putting Plaintiffs on notice of its claims. That is precisely what Thom Browne did in its Answer. As Thom Browne has sufficiently pled its counterclaim and its affirmative defenses at issue, the Court should deny Plaintiffs' Motion.

---

[1] Plaintiffs wrongly contend that Thom Browne's Amended Answer was "improperly-filed." Motion, 2. As Plaintiffs concede, after filing its original Answer and Counterclaim (Dkt. 49), Thom Browne filed its Amended Answer just 20-days thereafter to immediately address alleged deficiencies raised by Plaintiffs. *See* Federal Rule of Civil Procedure 15(a)(1)(A). Notably, Thom Browne's Amended Answer does ***not*** add any new affirmative defenses or counterclaims; rather, it simply provides additional details in limited instances to address Plaintiffs' purported complaints. Recognizing, at least implicitly, the propriety of Thom Browne's amendment, Plaintiffs' requested relief is not based on the timing of Thom Browne's Amended Answer (or its alleged failure to seek leave of court), but instead on Thom Browne's alleged failure to adequately plead its only counterclaim and just three (out of eighteen) of its affirmative defenses. And, to be sure, Plaintiffs' admit that Thom Browne's Amended Answer is the "operative pleading" here. Motion, 2.

1

## II. LEGAL STANDARDS

### A. Motion to Dismiss Under Rule 12(b)(6)

"To survive a motion to dismiss, a [counterclaim] must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In reviewing a motion to dismiss, the Court must construe the pleading liberally, "accepting […] factual allegations as true and drawing all reasonable inferences in the claimant's favor." *LLM Bar Exam, LLC v. Barbri, Inc.*, 922 F.3d 136, 140 (2d Cir. 2019).

### B. Motion to Strike Affirmative Defenses Under Rule 12(f)

"Motions to strike are generally disfavored in this circuit, and the Plaintiff bears a demanding burden to succeed on a motion to strike." *Cortez v. Stillwell Ready-Mix and Building Materials, L.L.C. et al*, 2022 WL 137465, at *4 (S.D.N.Y. Jan. 13, 2022) (citing *Tardif v. City of New York*, 302 F.R.D. 31, 32-33 (S.D.N.Y. 2014)); *see also Worldwide Home Prods., Inc. v. Bed Bath & Beyond, Inc.*, 2013 WL 247839, at *1 (S.D.N.Y. Jan. 22, 2013) ("Motions to strike are viewed with disfavor and are infrequently granted."). "[T]o prevail on a motion to strike: (1) there may be no question of fact which might allow the defense to succeed; (2) there may be no substantial question of law, a resolution of which could allow the defense to succeed; and (3) the moving party must show that it is prejudiced by the inclusion of the defense." *Cognex Corp. v. Microscan Sys., Inc.*, 990 F.Supp.2d 408, 418 (S.D.N.Y. 2013). While assessing a motion to strike requires applying a plausibility standard, such an application is a "context-specific" task that must account for the circumstances of any affirmative defenses. *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 97–98 (2d Cir. 2019).

In assessing the sufficiency of an affirmative defense, a motion to strike should not be granted "unless it appears to a certainty that plaintiffs would succeed despite any set of facts which could be proved in support of the defense." *William Z. Salcer, Panfeld, Edelman v. Envicon Equities Corp.*, 744 F.2d 935, 939 (2d Cir. 1984) (vacated on other grounds); *Keystone Global LLC v. Décor Essentials Ltd.*, 2014 WL 888336, at *2 (S.D.N.Y. Mar. 6, 2014) (stating that a motion to strike an affirmative defense "for legal insufficiency is not favored and will not be granted unless it appears to a certainty that plaintiffs would succeed despite any state of the facts which could be proved in support of the defense.").

## III. ARGUMENT

### A. Thom Browne's Counterclaim Is Sufficiently Plead And Does Not Fail As A Matter Of Law

Thom Browne's counterclaim states a plausible claim for cancellation of U.S. Trademark Registration No. 4,910,643 on the grounds of aesthetic functionality, as it most certainly contains factual allegations—most of which Plaintiffs ignore in their motion—that are "enough to raise a right to relief above the speculative level[.]"[2] *Twombly*, 550 U.S. at 555 (2007). "[A] mark is aesthetically functional, and therefore ineligible for protection under the Lanham Act, where protection of the mark significantly undermines competitors' ability to compete in the relevant market." *Christian Louboutin S.A. v. Yves Saint Laurent Am. Holdings, Inc.*, 696 F.3d 206, 222 (2d Cir. 2012). Here, Thom Browne's 29-paragraph counterclaim alleges facts sufficient to show that the "Three-Quadrilaterals Design is aesthetically functional as applied to the goods identified in Registration No. 4,910,643." (D.I. 51, Counterclaim ¶24).

---

[2] Contrary to Plaintiffs' contention, Thom Browne's Counterclaim does not consist entirely of the paragraphs Plaintiffs selectively included in their Motion, but also included photographs, which are depicted below, as well as preceding paragraphs that were incorporated by reference, and are not limited to the "prosecution history for the Challenged Registration."

Plaintiffs contend that the factual allegations in Thom Browne's counterclaim allegedly "do not plausibly support a counterclaim based on the doctrine of aesthetic functionality because they concern competitors' purported need to use 'parallel stripes on clothing,' not the Three-Stripe Mark (much less the particular iteration of the Three-Stripe Mark covered by the Challenged Registration)." Motion, 5. Plaintiffs are wrong.

Plaintiffs ignore facts pled in the Counterclaim that define and depict the specific "iteration" reflected in the Challenged Registration as the "Three-Quadrilaterals Design" and explain that adidas AG described this iteration to the Trademark Office as "three diagonal quadrilaterals positioned parallel to each other," which are "essentially, three stripes" as they are not limited "to any particular length, orientation or placement of the stripes on clothing." (D.I. 51, Counterclaim ¶¶18-20). In other words, that the three diagonal quadrilaterals depicted in the registration are the equivalent of three stripes.

Plaintiffs' complaints about the alleged breadth of Thom Browne's allegations are without merit. Plaintiffs should not be able to use their failure to define the Three-Stripe Mark as both a sword and shield to prevent Thom Browne from challenging the validity of their registration. Motion, 6 ("Thom Browne references the broad category of *any* number of 'parallel stripes' and then argues that protection of 'parallel stripes on clothing' *in general* would put competitors at a disadvantage."). Thom Browne specifically alleges in its Counterclaim that the Challenged Registration is not limited to any specific number or orientation of stripes, particularly in view of Plaintiffs' assertion of the Challenged Registration against Thom Browne's use of four horizontal parallel bands. D.I. 51, Counterclaim ¶21 ("Because adidas is asserting this registered trademark in this litigation against Thom Browne's use of four horizontal, parallel bands, adidas admits that its Three Quadrilaterals Design is *not limited* to a

diagonal orientation or to three stripes."). Indeed, the existence of multiple third party uses, such as those depicted in the Counterclaim, demonstrates that adidas cannot claim exclusive rights in a three stripe design, and especially cannot stretch its purported rights to cover a four parallel band design.

In the Counterclaim, Thom Browne makes clear that, because adidas alleges that products having stripes in different numbers and configurations infringe the Challenged Registration, Reg. No. 4,910,643, the mark of that registration puts competitors at a significant disadvantage:

> Third parties have designed and sold clothing, footwear, and fashion accessories featuring decorative stripes for decades. If fashion designers are not permitted to use stripes on clothing, they would be put at a significant, non-reputation related disadvantage. Because of stripes' numerous uses as fashion statements or informational indicators, consumers are accustomed to seeing stripes used on clothing sold by different manufacturers.

D.I. 51, Counterclaim ¶17. Thom Browne then went further, alleging on information and belief that "third party clothing designers use stripes in a wide variety of orientations, numbers and placements on clothing, including in a diagonal orientation and/or parallel to one another" (D.I. 51, Counterclaim ¶22), and included images of specific examples of clothing with three stripes:



| Adidas AG Reg. No. 4,910,643 | Exemplary Third-Party Use Stripes |
|---|---|
| D.I. 51, Counterclaim ¶¶13, 18 | D.I. 51, Counterclaim ¶22) |

That there may, in fact, be "an unspecified number and orientation of 'parallel stripes' [that are] aesthetically functional," is a problem of Plaintiffs' own making. Motion, 6-7.

Regardless, at the pleading stage, Thom Browne need not demonstrate—and the Court need not determine—the full scope of aesthetic functionality as applied to the registration at issue.[3]

Finally, while Plaintiffs take issue with Thom Browne's allegations that fashion designers would be put to a significant, non-reputation related disadvantage if they were not permitted to use parallel stripes on clothing (*compare* Motion, 7 *with* D.I. 51, Counterclaim ¶¶17, 23), such allegations are sufficient to withstand a motion to dismiss. Contrary to Plaintiffs' suggestion, Thom Browne need not ***prove***, at this stage, "what disadvantage these designers would suffer" or "why it is 'significant.'" Motion, 7. As to Thom Browne, the counterclaim nevertheless already further alleges:

- "Since its founding in 2001, Thom Browne has achieved international fame and acclaim. Thom Browne's clothing and accessories are renowned for its tailoring and craftsmanship, are sold to high end and often famous individuals, and cost several hundred to several thousand dollars per garment." D.I. 51, Counterclaim ¶15.

- "Thom Browne's clothing and fashion accessories are also recognized through its signature four band design (the 'Four Band Design') which it has used since at least as early as January 2009. This design is featured asymmetrically, on the left side of Thom Browne's clothing, in a horizontal orientation, typically on a garment's leg or sleeve." D.I. 51, Counterclaim ¶16.

- "Thom Browne believes it is likely to be damaged by maintenance of adidas AG's Registration No. 4,910,643 because adidas is asserting that registration against Thom Browne in this case in an effort to disrupt Thom Browne's business." D.I. 51, Counterclaim ¶28.

To be sure, the full extent of "what disadvantage these designers would suffer" or "why it is 'significant'" is for discovery to determine.

---

[3] Plaintiffs' cited cases are inapposite. *See Villeroy & Boch Keramische Werke K.G. v. THC Sys., Inc.*, 999 F.2d 619, 621 (2d Cir. 1993) (reversing district court's grant of ***summary judgment***); *Rubik's Brand Ltd. v. Flambeau, Inc.*, 2021 WL 363704, at *11 (S.D.N.Y. Jan. 31, 2021) (report and recommendation on motion for ***summary judgment***); *Steven Madden, Ltd. v. Yves Saint Laurent*, 2019 WL 2023766, at *9 (S.D.N.Y. May 8, 2019) (addressing whether plaintiff "adequately alleged that functionality doctrine does not render the designs at issue in this case ineligible for ***trade dress protection***").

Thus, based at least on the foregoing, and contrary to Plaintiffs' assertion, Thom Browne does, in fact, "allege that protection of the Three-Stripe Mark would put [fashion designers] at a significant disadvantage." Motion, 6. Thom Browne has sufficiently alleged, based on information available to it at the current stage of discovery, how third-party fashion designers are being harmed, or will be harmed, by adidas AG's attempts to prevent third parties from using parallel stripes. The Court should deny Plaintiffs' motion.

B.  **Thom Browne's Affirmative Defenses Are Sufficiently Plead.**

Thom Browne's First, Ninth, and Twelfth Affirmative Defenses are well-pled, and should not be stricken.

Contrary to Plaintiffs' assertion, these affirmative defenses would ***not*** "add elements into the lawsuit that would require their own discrete discovery and evidence at trial." Motion, 8. Nor would their inclusion in this case increase the time and expense of trial or otherwise prejudice Plaintiffs. The parties have been discussing these affirmative defenses for years during settlement talks. *See, e.g.*, Report and Recommendation Regarding Plaintiffs' Motion to Dismiss, Dkt. 41 at 14 n.8 ("Thom Browne's challenge to the Complaint based on lack of fair notice also seems somewhat disingenuous in light of the parties' having been engaged in on-again, off-again settlement discussions for the last three years or so."). These defenses have not only been known to Plaintiffs, but also have been (and continue to be) the subject of extensive written discovery, including by Plaintiffs, and will soon be the subject of deposition discovery.[4]

---

[4] Even if Plaintiffs could credibly claim prejudice (which they cannot), such alleged prejudice is not even dispositive. *See GEOMC*, 918 F.3d at 98 ("A factually sufficient and legally valid defense should always be allowed if timely filed even if it will prejudice the plaintiff by expanding the scope of the litigation. A defendant with such a defense is entitled to a full opportunity to assert it and have it adjudicated before a plaintiff may impose liability.").

7

For example, in their Initial Disclosures, served in November 2021, both parties identify witnesses relevant to Thom Browne's equitable defenses (laches, acquiescence, and estoppel). *See* Declaration of Quincy Kayton ("Kayton Decl."), Ex. A (Plaintiffs' Initial Disclosures) at 2 (Plaintiffs identifying "Vanessa Backman, former Assistant General Counsel of adidas Group" as an individual with alleged "knowledge that adidas did not acquiesce to Thom Browne's use of stripes"); Kayton Decl., Ex. B (Thom Browne's Initial Disclosures) at 3 (Thom Browne identifying "Vanessa Backman" as knowledgeable about*, inter alia*, "Thom Browne's use of three stripes on apparel and footwear; change from 3 stripes to 4 stripes; adidas' consent," as well as "Tom Becker," Thom Browne's former CEO, as knowledgeable about "adidas' consent; change from 3 stripes to 4 stripes"). To be sure, further refuting Plaintiffs' claim of prejudice, Plaintiffs have identified their own outside counsel of record, Richard Charles Henn, Jr., "as having substantive communications with Thom Browne prior to the filing of this lawsuit about Thom Browne's use of stripes." *See* Kayton Decl., Ex. C (adidas AG's Objections and Responses to Defendant's First Set of Interrogatories) at Interrogatory No. 7, Subparts 1 & 2; *see* Kayton Decl., Ex. D (adidas America's Objections and Responses to Defendant's First Set of Interrogatories) at Interrogatory No. 7, Subparts 1 & 2.

For further example, Plaintiffs' first set of interrogatories, served even earlier, in October 2021, include multiple interrogatories specifically directed to Thom Browne's equitable defenses. *See* Kayton Decl., Ex. E at 6-7 (Interrogatory No. 1: "Identify each Document or Communication in which adidas expressed to Thom Browne, whether implicitly or explicitly, adidas's sanctioning or allowance of, or acquiescence or agreement to, Thom Browne's use of a Stripe Design."), (Interrogatory No. 2: "Identify each natural Person—whether associated with Thom Browne, adidas, or a Third Party—who participated in any Communication in which

adidas expressed to Thom Browne, whether implicitly or explicitly, adidas's sanctioning or allowance of, or acquiescence or agreement to, Thom Browne's use of a Stripe Design."), (Interrogatory No. 4: "Identify the Persons most knowledgeable concerning the design, appearance, advertising, sales, and distribution of Thom Browne Activewear between 2005 and 2008.").

These are just some of the many examples showing not only that the parties, including Plaintiffs, are actively litigating Thom Browne's challenged affirmative defenses, but also the significance of these defenses to Plaintiffs' allegations. There is simply no support for Plaintiffs' bare assertion that they would be "prejudiced" by their inclusion here; and, indeed, such an assertion is disingenuous at best. Rather, it would be Thom Browne—not Plaintiffs—that would be significantly prejudiced if these affirmative defenses were to be stricken. As discussed below, however, there is no basis to strike these defenses.

### 1. Thom Browne's First Affirmative Defense (Laches, Acquiescence, and Estoppel) Is Sufficiently Plead.

Thom Browne's first affirmative defense to Plaintiffs' claims is based on the equitable defenses of laches, acquiescence, and estoppel. As Thom Browne alleges:

> In around 2007, adidas complained to Thom Browne about its use of three horizontal parallel bands on its clothing. In response, without any admission of wrongdoing and with adidas' consent, Thom Browne changed from three horizontal parallel bands to four horizontal parallel bands. Since 2009, Thom Browne has used four horizontal parallel bands on a wide variety of clothing. From 2009 through 2018, adidas did not complain about Thom Browne's use of four horizontal parallel bands on clothing. Throughout this period of time, on information and belief, there have been no instances of actual confusion between Thom Browne's use of four horizontal parallel bands, and adidas' use of three stripes. In view of the foregoing, adidas' claims in this action are barred by the doctrines of laches, acquiescence, and estoppel.

D.I. 51, 11-12 (First Affirmative Defense).

Conceding that Thom Brown has adequately plead all other elements of these defenses, Plaintiffs' lone complaint to these detailed allegations is that Thom Browne insufficiently plead its First Affirmative Defense because Thom Browne supposedly "fail[ed] to allege that it has been prejudiced by adidas's purported conduct." Motion, 8 ("A defendant raising any of these three defenses is required to plead that it has suffered undue prejudice.") Plaintiffs' real complaint, though, appears to be that Thom Browne's First Affirmative Defense does not expressly use the word "prejudice." But that is not the standard. While assessing a motion to strike requires applying a plausibility standard, such an application is a "context-specific" task that must account for the circumstances of any affirmative defenses. *GEOMC*, 918 F.3d at 97-98.

Here, the circumstances are that for nearly a decade, Thom Browne has used four horizontal parallel bands on a wide variety of clothing **with adidas' consent**. It was not until 2018 that Plaintiffs abruptly changed their tune, and then accused Thom Browne of trademark infringement, unfair competition, trademark dilution, and other related state and common law claims. Plaintiffs not only seek an injunction for Thom Browne's alleged infringement, but also disgorgement of profits, treble and punitive damages, and attorneys' fees. To now say that "Thom Browne fails to allege that it has been prejudiced by adidas's purported conduct" (Motion, 8) **completely ignores** the circumstances surrounding the allegations in Thom Browne's First Affirmative Defense. There is no question that Plaintiffs' unreasonable delay in bringing this action—indeed, nearly ten years—has caused Thom Browne substantial prejudice, since as a direct result of Plaintiffs' consent and subsequent delay, Thom Browne began and continued the acts which allegedly support Plaintiffs' claims—namely, the change from three horizontal parallel bands to four horizontal parallel bands and the use of four horizontal parallel bands on a wide variety of clothing from 2009 through 2018.

Thus, accepting as true all well-pleaded factual allegations and drawing all reasonable inferences in Thom Browne's favor, Thom Browne has more than sufficiently plead facts from which prejudice resulting from Plaintiffs' actions (and inactions) can, at least, be inferred. The Court should deny the Motion because, at a minimum, there are questions of fact and law that would allow these defenses to succeed. *See Cognex*, 990 F.Supp.2d at 418 (to succeed on a motion to strike, "there may be no question of fact which might allow the defense to succeed" and "there may be no substantial question of law, a resolution of which could allow the defense to succeed").

Plaintiff's cited cases are misplaced. In *Coach, Inc. v. Kmart Corps.*, 756 F. Supp. 2d 421, 426-428 (S.D.N.Y. 2010), defendants offered no more than a boilerplate assertion that plaintiffs' claims were "barred by" estoppel, acquiescence, and laches, and the pleadings were "void of any facts supporting these defenses." Thus, the court determined that "there is no question of fact or law that might allow an estoppel [or acquiescence or laches] defense to succeed and the defense is therefore insufficient as a matter of law." *Coach*, 756 F. Supp. 2d at 426-427. Here, by contrast, there are ample facts supporting Thom Browne's equitable defenses, as discussed above. Similarly, in *Hudson Bay Master Fund Ltd. v. Patriot Nat'l, Inc.*, 2016 WL 6906583, at *7 (S.D.N.Y. Nov. 21, 2016), defendants "conceded" that the affirmative defense of waiver and laches were their "weakest affirmative defenses," and, indeed, defendants "lack[ed] any factual basis for these defenses." *Id.* Again, here, Thom Browne's equitable defenses are well-supported by factual allegations.

    **2.    Thom Browne's Ninth Affirmative Defense (Unjust Enrichment) Is Sufficiently Plead.**

The parties agree that, to prevail on a claim of unjust enrichment, a party must establish (1) that the other party benefitted; (2) at the complaining party's expense; and (3) that "equity

and good conscience" require restitution. *See Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). In its Ninth Affirmative Defense for unjust enrichment, Thom Browne alleges that "[a]t least because adidas has suffered no harm or damages, adidas will be unjustly enriched if permitted to recover on its Complaint." D.I. 51, 13 (Ninth Affirmative Defense). Plaintiffs complain that "Thom Browne neither pleads, nor attempts to allege facts supporting, any of the requisite elements of unjust enrichment." Motion, 9. But Plaintiffs (again) appear to confuse pleading requirements with establishing elements of proof at trial. At this stage, Thom Brown need not **prove** precisely how Plaintiffs may be unjustly enriched if permitted to recover on its claims. Thom Browne should be permitted "a full opportunity" to pursue this defense at summary judgment and trial "after full discovery has been made." *Bennett v. Soor Behrins Campbell & Young*, 124 F.R.D. 562, 563 (S.D.N.Y. 1989).

Notably, Plaintiffs cite to no authority where a court struck an affirmative defense of unjust enrichment. This is unsurprising as "[m]otions to strike are generally disfavored in this circuit, and the Plaintiff bears a demanding burden to succeed on a motion to strike." *Cortez*, 2022 WL 137465, at *4.

### 3. Thom Browne's Twelfth Affirmative Defense (Aesthetic Functionality) Is Sufficiently Plead.

Plaintiffs offer no new arguments here. Instead, Plaintiffs merely contend that Thom Browne's aesthetic functionality affirmative defense fails for the same reasons as its related counterclaim. Not so. Just as Thom Browne's counterclaim pleads sufficient facts to withstand a motion to dismiss, this affirmative defense likewise pleads sufficient facts to withstand a motion to strike. Thom Browne adequately pleads its aesthetic functionality affirmative defense, and Plaintiffs' earlier arguments should be rejected here too. *See* Section III.A.

## IV. CONCLUSION

For the foregoing reasons, Thom Browne respectfully requests that the Court deny Plaintiffs' Motion and permit Thom Browne's Counterclaim and First, Ninth, and Twelfth Affirmative Defenses to proceed.

Date: June 30, 2022

/s/ Robert T. Maldonado
Robert T. Maldonado (RM-7873)
rmaldonado@wolfgreenfield.com
Tonia A. Sayour (TS-7208)
tsayour@wolfgreenfield.com
WOLF, GREENFIELD, & SACKS, P.C.
605 Third Avenue, 25th Floor
New York, New York 10158
212.697.7890 Phone
617.646.8646 Fax

Quincy Kayton (QK-8826)
qkayton@wolfgreenfield.com
WOLF, GREENFIELD, & SACKS, P.C.
600 Atlantic Avenue
Boston, Massachusetts 02210
617.646.8000 Phone
617.646.8646 Fax

Harley I. Lewin (HL-1819)
LEWINCONSULT, LLC
72 Commercial Street #5
Portland, Maine 04101
Harley@LewinConsult.com
207-805-6884 Phone

*Attorneys for Thom Browne, Inc.*

## **CERTIFICATE OF SERVICE**

      I certify that this document is being filed through the Court's electronic filing system, which serves counsel for other parties who are registered participants as identified on the Notice of Electronic Filing (NEF). Any counsel for other parties who are not registered participants are being served by first class mail on the date of electronic filing.

                                      /s/ Robert T. Maldonado
                                      Robert T. Maldonado