```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 9/21/2022
```

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ADIDAS AMERICA, INC., and ADIDAS AG,  :
                                      :   21-CV-5615 (JSR) (RWL)
            Plaintiffs,               :
                                      :
      - against -                     :   **REPORT AND RECOMMENDATION**
                                      :   **TO HON. JED S. RAKOFF:**
THOM BROWNE, INC.,                    :   **MOTION TO DISMISS COUNTERCLAIM**
                                      :   **AND STRIKE AFFIRMATIVE DEFENSES**
            Defendant.                :
------------------------------------------------------------X

**ROBERT W. LEHRBURGER, United States Magistrate Judge.**

This is a trademark infringement, unfair competition, and dilution case. Plaintiffs adidas America Inc. and adidas AG (collectively "adidas") seek injunctive relief and damages against Thom Browne, Inc. ("Thom Browne"), which markets and sells sportswear and athletic-styled footwear adorned with allegedly similar imitations of adidas' three-stripe design trademark (the "Three-Stripe Mark"). Following denial of its motion to dismiss, Thom Browne filed an answer raising eighteen affirmative defenses and a counterclaim seeking cancellation of adidas' trademark registration No. 4,910,643 (the "Three-Quadrilaterals Design" or the "Challenged Registration"). Thom Browne asserts the Challenged Registration should be cancelled on grounds of aesthetic functionality. adidas now moves to dismiss Thom Browne's counterclaim pursuant to Federal Rule of Civil Procedure ("Rule") 12(b)(6) and to strike Thom Browne's first, ninth, and twelfth affirmative defenses under Rule 12(f). For the reasons set forth below, I recommend that the motion be GRANTED in part and DENIED in part.

1

## PROCEDURAL BACKGROUND

adidas filed its Complaint on June 28, 2021. (Dkt. 1 ("Compl.").) The Complaint alleges trademark infringement, unfair competition, and trademark dilution under the federal Lanham Act, 15 U.S.C. § 1114, 1125(a), (c), as well as related causes of action under New York statutory and common law. On April 21, 2022, the Honorable Jed S. Rakoff, U.S.D.J., adopting the undersigned's Report and Recommendation, (1) denied Thom Browne's motion to dismiss the Complaint for failure to state a claim, and (2) granted Thom Browne's request to strike adidas' prayer for relief asking the Court to sustain its opposition to Thom Browne's trademark application for a four-stripe mark proceeding before the Trademark Trial and Appeals Board. (Dkt. 47.)

On May 5, 2022, Thom Browne filed an answer and counterclaim seeking cancellation of one of Plaintiffs' trademark registrations, namely the design mark No. 4,910,643. (Dkt. 49.) Thom Browne amended its answer and counterclaim on May 25, 2022. (Dkt. 51 (the "Answer" and "Counterclaim").[1]) On June 9, 2022, adidas filed a motion to dismiss Thom Browne's counterclaim and to strike three of Thom Browne's eighteen affirmative defenses: the first (laches, acquiescence, and estoppel), ninth (unjust enrichment) and twelfth (aesthetic functionality). (Dkts. 52-54.) Thom Browne filed its opposition on June 30, 2022. (Dkts. 64, 65.) The motion was fully briefed on July 14, 2022.

---

[1] Pages 1-16 are the Answer and Affirmative Defenses; pages 16-21 are the Counterclaim.

**FACTUAL BACKGROUND**

The factual background is drawn primarily from Thom Browne's Answer and Counterclaim. As required on a motion to dismiss pursuant to Rule 12(b)(6), the Court accepts the facts alleged in the Counterclaim as true and draws all reasonable inferences in favor of Thom Browne as the non-moving party. *Demirovic v. Ortega*, 771 F. App'x 111, 113 (2d Cir. 2019); *Kingvision Pay-Per-View Ltd. v. Falu*, No. 06-CV-4457, 2008 WL 318352, at *1 (S.D.N.Y. Feb. 4, 2008).

adidas is a clothing company famous for its activewear and accessories as well as its "overzealous enforce[ment] of its actual and perceived rights in its 'Three-Stripe Mark.'" (Counterclaim ¶ 2.) On February 4, 2014, adidas applied to register with the U.S. Patent and Trademark Office its Three-Quadrilaterals Design, consisting of three stripes tilting diagonally to the right. (*Id*. ¶¶ 13, 18, 20.) In the application, as amended, adidas described the mark as "consist[ing] of three diagonal quadrilaterals positioned parallel to each other." (*Id*. ¶ 19.) The registration does not limit the three stripes to any particular length, orientation, or placement of the stripes on clothing. (*Id*. ¶ 20.)

Thom Browne is an international clothing and accessories company founded in 2001. (*Id.* ¶¶ 1, 15.) Thom Browne's clothing and accessories are known for their tailoring and craftsmanship and are sold for several hundred to several thousand dollars per garment. (*Id*. ¶ 15.) The clothing and fashion accessories are recognized through Thom Browne's signature four-band design ("Four Band Design"). (*Id*. ¶¶ 1, 16.) The Four Band Design is featured on the left side of Thom Browne's clothing, in a horizontal orientation, typically on a garment's leg or sleeve. (*Id*. ¶ 16.)

Thom Browne adopted the Four Band Design over a decade ago in order to avoid a dispute with adidas about use of its trademarks without any admission of wrongdoing. (*Id.* ¶ 3.)  adidas acquiesced to Thom Browne's change from three bands to four bands. (*Id.*)  On June 28, 2021, however, adidas filed its Complaint alleging that Thom Browne's offering athletic sportswear and footwear using its Four Band Design infringes and dilutes adidas' Three-Stripe Mark.  (*Id.* ¶¶ 12, 21.)

Thom Browne alleges that because adidas is asserting its registered trademark against Thom Browne's use of four horizontal, parallel bands, adidas admits that its Three Quadrilaterals Design is not limited to a diagonal orientation or to three stripes.  (*Id.* ¶ 21.)  Building on that assertion, Thom Browne alleges that if clothing designers were not permitted to use parallel stripes on clothing, they would be put at a significant, non-reputation related disadvantage.  (*Id.* ¶ 23.)  As a result, Thom Browne contends, the Three Quadrilaterals Design is aesthetically functional and should be cancelled under 15 U.S.C. § 1119.  (*Id.* ¶¶ 24-29.)

**MOTION TO DISMISS COUNTERCLAIM**

**A.    Legal Standard For Rule 12(b)(6) Motion To Dismiss**

"A court evaluates a motion to dismiss a counterclaim under Federal Rule of Civil Procedure 12(b)(6) using the same standard as a motion to dismiss a complaint." *Korpak, Ltd. v. Williams Lea Inc.*, No. 20-CV-6880, 2022 WL 375543, at *3 (S.D.N.Y. Feb. 7, 2022).

To survive a Rule 12(b)(6) motion, a complaint (or counterclaim) must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007); *see also Sotheby's, Inc. v.*

*Stone*, 388 F. Supp.3d 265, 272 (S.D.N.Y. 2019).  A claim is facially plausible when the factual content pleaded allows a court "to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 1949 (2009).  "Where a complaint pleads facts that are 'merely consistent with' a defendant's liability, it 'stops short of the line between possibility and plausibility of "entitlement to relief."'"  *Id.*, 556 U.S. at 678, 129 S. Ct. at 1949 (quoting *Twombly*, 550 U.S. at 557, 127 S. Ct. at 1966); *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 99 (2d Cir. 2019) ("a new counterclaim, like all pleadings, must conform to the pleading requirements of *Twombly* and *Iqbal*").

In considering a motion to dismiss for failure to state a cause of action, a district court must "accept[ ] all factual claims in the complaint as true, and draw[ ] all reasonable inferences in the [non-moving party's] favor."  *Lotes Co. v. Hon Hai Precision Industry Co.*, 753 F.3d 395, 403 (2d Cir. 2014) (internal quotation marks omitted).  This tenet, however, is "inapplicable to legal conclusions.  Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Iqbal*, 556 U.S. at 678, 129 S. Ct. at 1949.  Rather, the complaint's "[f]actual allegations must be enough to raise a right to relief above the speculative level, … i.e., enough to make the claim plausible."  *Arista Records LLC v. Doe 3*, 604 F.3d 110, 120 (2d Cir. 2010) (internal quotation marks and citation omitted).  A complaint is properly dismissed where, as a matter of law, "the allegations in [the] complaint, however true, could not raise a claim of entitlement to relief."  *Twombly*, 550 U.S. at 558, 127 S. Ct. at 1966.

B.     **Thom Browne's Counterclaim Fails To State A Claim For Relief**

adidas contends that Thom Browne's Counterclaim fails to set forth factual allegations that plausibly support a claim based on aesthetic functionality because the Counterclaim concerns competitors' purported need to use "parallel stripes on clothing," not the "Three-Stripe Mark" as featured in the Challenged Registration. (Pl. Mem. at 5.[2]) In the alternative, adidas argues that Thom Browne failed to allege facts plausibly showing that protection of the Three-Stripe Mark would put competitors at a significant non-reputation-related disadvantage. (Pl. Mem. at 7.) Thom Browne counters that it has sufficiently alleged aesthetic functionality by alleging that the Challenged Registration is not limited to any specific number or orientation of stripes, and has sufficiently alleged harm to third party fashion designers. (Def. Mem. at 6-7.[3])

"[A] mark is aesthetically functional, and therefore ineligible for protection under the Lanham Act, where protection of the mark *significantly* undermines competitors' ability to compete in the relevant market." *Christian Louboutin S.A. v. Yves Saint Laurent America Holdings, Inc.,* 696 F.3d 206, 222 (2d Cir. 2012) (emphasis in original); *see also Maharishi Hardy Blechman Ltd. v. Abercrombie & Fitch Co.*, 292 F. Supp.2d 535, 543 (S.D.N.Y. 2003) (the aesthetic functionality doctrine forecloses protection if the trademark "would significantly hinder competition by limiting the range of adequate alternative

---

[2] "Pl. Mem." refers to Plaintiffs' Memorandum In Support Of Adidas's Motion To Dismiss Thom Browne's Counterclaim And Strike Its First, Ninth, and Twelfth Affirmative Defenses at Dkt. 53.

[3] "Def. Mem." refers to Defendant Thom Browne, Inc.'s Opposition To adidas's Motion To Dismiss Thom Browne's Counterclaim And Strike Its First, Ninth, And Twelfth Affirmative Defenses at Dkt. 64.

designs"). "In making this determination, courts must carefully weigh the competitive benefits of protecting the source-identifying aspects of a mark against the competitive costs of precluding competitors from using the feature." *Christian Louboutin S.A.*, 696 F.3d at 222 (internal citations omitted).

According to adidas, it owns numerous federal trademark registrations covering its Three-Stripe Mark as applied to apparel, footwear, and various other products. (*See* Compl. ¶¶ 15-28.) The Challenged Registration covers an iteration of the Three-Stripe Mark depicting three short right leaning diagonal quadrilaterals, a.k.a., stripes. (*See* Counterclaim ¶¶ 19-20.) For the following reasons, the Court concludes that the Counterclaim fails to set forth factual allegations that the trademark covered by the Challenged Registration is aesthetically functional.

To repeat, the Challenged Registration is for a trademark consisting of ***three*** right leaning stripes. But that is not what Thom Browne contends would put competitors at a significant disadvantage if they could not use it without Thom Browne's permission, as aesthetic functionality requires. Instead, Thom Browne grounds its aesthetic functionality argument in use of stripes generally, not limited to any particular number.

The crux of the Counterclaim's allegations is as follows: the protected mark is "essentially[ ] three stripes" not limited to "any particular length, orientation or placement of the stripes on clothing" (Counterclaim ¶ 20); "third party clothing designers use ***stripes in a wide variety*** of orientations, numbers and placements on clothing"; and if "clothing designed were not permitted to use ***parallel stripes*** on clothing, they would be put to a significant, non-reputation related disadvantage." (*Id*. ¶¶ 22-23 (emphasis added).) The

Counterclaim then concludes that the "Three-Quadrilateral Design as applied to the goods identified in the Challenged Registration is aesthetically functional." (*Id*. ¶ 24.)

But aside from stating "third party clothing designers use stripes" in varying orientations and placements on apparel, Thom Browne has not alleged that the use of **three** parallel stripes – the subject of the Challenged Registration – is "essential to effective competition in a particular market." *Landscape Forms, Inc. v. Columbia Cascade Co.,* 70 F.3d 251, 253 (2d Cir. 1995). Thom Browne thus has not asserted a plausible claim that the trademark protected by the Challenged Registration is aesthetically functional.

Instead, Thom Browne impermissibly attempts to transform an infringement argument into an invalidity argument. It thus premises its aesthetic functionality claim on the fact that adidas claims infringement of the Challenged Registration: "Because adidas is asserting this registered trademark in this litigation against Thom Browne's use of four horizontal, parallel bands, adidas admits that its Three Quadrilaterals Design is not limited to a diagonal orientation or to three stripes." (Counterclaim ¶ 21.) It may be that a mark consisting of more than three stripes could be deemed to infringe adidas' Three-Stripe Mark as set forth in the Challenged Registration. But that turns on a number of factors that have nothing to do with whether a mark is invalid for aesthetic functionality.

Rather, infringement is determined based on whether use of defendant's mark is likely to cause confusion with plaintiff's registered trademark, which in the Second Circuit requires application of the eight *Polaroid* factors, so-called based on *Polaroid Corp. v. Polarad Electronics Corp.*, 287 F.2d 492 (2d Cir.1961). *See* 15 U.S.C. § 1114(1); *National Academy of Television Arts and Sciences, Inc. v. Multimedia System Design,*

*Inc.*, 551 F. Supp.3d 408, 426 (S.D.N.Y. 2021) ("to state a claim for trademark infringement …, a plaintiff must allege sufficient facts to establish: (1) that the plaintiff's mark is entitled to protection, and (2) that the defendant's 'use of its mark is likely to cause consumers confusion as to the origin or sponsorship of [its] goods'") (quoting *Guthrie Healthcare Systems v. ContextMedia, Inc.*, 826 F.3d 27, 37 (2d Cir. 2016)); *Starbucks Corp. v. Wolfe's Borough Coffee, Inc.*, 588 F.3d 97, 115 (2d Cir. 2009) (assessing likelihood of confusion by applying the eight *Polaroid* factors, which include: "(1) strength of the trademark; (2) similarity of the marks; (3) proximity of the products and their competitiveness with one another; (4) evidence that the senior user may 'bridge the gap' by developing a product for sale in the market of the alleged infringer's product; (5) evidence of actual consumer confusion; (6) evidence that the imitative mark was adopted in bad faith; (7) respective quality of the products; and (8) sophistication of consumers in the relevant market").

Accordingly, the fact that Thom Browne's use of its Four Band Design on athletic clothing may, if proven, infringe adidas' Three Stripe Mark as reflected in the Challenged Registration says nothing about whether the registration itself is limited to three stripes, which it clearly is. (*See* Counterclaim ¶ 19 ("On January 3, 2014, adidas AG amended its application to include the following textual description: 'The mark consists of **three** diagonal quadrilaterals positioned parallel to each other'" (emphasis added).) Thom Browne's aesthetic functionality argument theorizes a registered trademark that does not exist: a trademark on all number and orientations of stripes.[4]

---

[4] adidas frames the point a bit differently, arguing that aesthetic functionality concerns competitor's need to use the specific mark or "feature" for which protection is sought, and

As adidas points out, it appears that Thom Browne has avoided alleging the exclusive right to use the Three-Stripe Mark as embodied in the Challenged Registration would put competitors at a significant disadvantage because Thom Browne itself asserts trademark rights in its Four Banded Design; namely, four horizontal parallel bands on a wide variety of clothing.[5]  Were Thom Browne to argue that the trademark asserted by adidas – the Three Stripe Mark –  put competitors at a significant disadvantage so as to render the mark unprotectable, it would be an implicit admission that its own trademark was subject to invalidation on grounds of aesthetic functionality.  Accordingly, rather than focusing on the trademark that is the subject of the Challenged Registration, Thom Browne grounds its aesthetic functionality argument on the use of parallel stripes on clothing generally.  (*See* Counterclaim ¶ 23.)  As such, Thom Browne fails to assert a plausible claim that the trademark protected by the Challenged Registration is invalid as aesthetically functional, and the Counterclaim should be dismissed for failure to state a claim.

---

the specific "feature" at issue is the Three-Stripe Mark.  (Pl. Mem. at 5-6.)  As support, adidas aptly cites several cases emphasizing focus on the specific marks at issue, not some generalized version of them.  *See Qualitex v. Jacobson Products Company, Inc.*, 514 U.S. 159, 165, 115 S. Ct. 1300, 1304 (1995); *Villeroy & Boch Keramische Werke K.G. v. THC Systems, Inc.*, 999 F.2d 619, 621 (2d Cir. 1993); *Rubik's Brand Ltd. v. Flambeau, Inc.*, No. 17-CV-6559, 2021 WL 363704, at *11 (S.D.N.Y. Jan. 31, 2021); *Steven Madden, Ltd. v. Yves Saint Laurent*, No. 18-CV-7592, 2019 WL 2023766, at *9 (S.D.N.Y. May 8, 2019).  Thom Browne asserts that *Villeroy* and *Steven Madden* are inapposite as they were at the summary judgment stage, and that *Buik's Brand* concerns trade dress protection.  (Def. Mem. at 6 n.3.)  Those differences are not material and do not transform Thom Browne's Counterclaim into one that is adequately pled.

[5] Thom Browne's applications for registration of its claimed trademarks were the subject of Thom Browne's successful motion to strike adidas' request for relief that the Court sustain adidas' opposition to the applications.  (*See* Dkt. 41, 47.)

**C.     Dismissal With Or Without Prejudice**

When granting a motion to dismiss, "leave to amend at least once should normally be granted as a matter of course." *Oliver Schools, Inc. v. Foley*, 930 F.2d 248, 253 (2d Cir. 1991).  And although a court should "freely give leave [to amend] when justice so requires" (Fed. R. Civ. P. 15(a)(2)), the Court may deny leave to amend if: (1) there has been undue delay; (2) amendment would prejudice the opposing party; or (3) the amendment would be futile.  *Foman v. Davis*, 371 U.S. 178, 182, 83 S. Ct. 227, 230 (1962); *Sprague v. Salisbury Bank & Trust Co.*, 969 F.3d 95, 101 (2d Cir. 2020); *Ruotolo v. City of New York*, 514 F.3d 184, 191 (2d Cir. 2008).

Here, Thom Browne requested leave to amend in the event the Court grants adidas' motion only after the motion was fully briefed.  (Dkt. 69.)  Nonetheless, further amendment would be futile.  The subject of the instant motion is Thom Browne's Counterclaim, representing its second try at sufficiently pleading its invalidity claim based on aesthetic functionality.  Thom Browne filed its initial counterclaim on May 5, 2022 (Dkt. 49), and its amended Counterclaim on May 25, 2022.[6]  (Dkt. 51.)  Before Thom Browne filed its amended Counterclaim, however, adidas had presented its arguments regarding the initial Counterclaim's deficiencies, putting Thom Browne on notice of such deficiencies.  (*See* Dkt. 54, Declaration of H. Forrest Flemming III ¶ 2 and Ex. 1.)  Thom Browne thus had notice and opportunity to cure its aesthetic functionality counterclaim, but did not successfully do so.  Given that Thom Browne's aesthetic functionality claim is

---

[6] Having filed its amended counterclaim within 21 days of filing its initial pleading, Thom Browne's amendment was made without leave pursuant to Fed. R. Civ. P. 15(a)(1).

11

based on a flawed theory, no additional amendment can cure its failure to allege facts plausibly supporting its Counterclaim. Accordingly, dismissal should be with prejudice.

## MOTION TO STRIKE DEFENSES

Thom Browne has asserted 18 affirmative defenses to adidas' claims. adidas argues that three of them should be stricken as insufficiently plead: (1) laches, acquiescence, and estoppel; (2) unjust enrichment; and (3) aesthetic functionality. The Court finds that the defense of laches, acquiescence, and estoppel is sufficiently plead; that the unjust enrichment defense should be stricken in part; and that the defense of aesthetic functionality should be stricken.

### A.      Legal Standard For Motion To Strike

A "court may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). To prevail on a motion to strike, the moving party must satisfy a stringent three-pronged test: "(1) there [must be] no question of fact that might allow the defense to succeed; (2) there [must be] no question of law that might allow the defense to succeed; and (3) the plaintiff [must be] prejudiced by the inclusion of the defense.'" *Securities & Exchange Commission v. Rayat*, No. 21-CV-4777, 2021 WL 4868590, at *2 (S.D.N.Y. Oct. 18, 2021) (quoting *GEOMC Co. v. Calmare Therapeutics Inc.*, 918 F.3d 92, 96 (2d Cir. 2019)). Motions to strike affirmative defenses under Rule 12(f) are generally disfavored as the standard to prevail is demanding. *Tardif v. City of New York*, 302 F.R.D. 31, 32 (S.D.N.Y. 2014).

Nonetheless, the Second Circuit has held, with respect to the first factor, that "the plausibility standard of *Twombly* applies to determining the sufficiency of … an affirmative defense, but with recognition that, as the Supreme Court explained in *Iqbal*, applying the

plausibility standard to any pleading is a 'context-specific' task." *GEOMC Co.*, 918 F.3d at 98; *see also Town & Country Linen Corp. v. Ingenious Designs LLC*, No. 18-CV-5075, 2020 WL 3472597, at *5 (S.D.N.Y. June 25, 2020) (same). A defendant must therefore support an affirmative defense with "some factual allegations to make them plausible." *GEOMC*, 918 F.3d at 99; *see also E.E.O.C. v. Kelley Drye & Warren, LLP*, No. 10-CV-655, 2011 WL 3163443, at *2 (S.D.N.Y. July 25, 2011) ("[A]ffirmative defenses that contain only 'bald assertions' without supporting facts should be stricken").

As to the second factor, the affirmative defense should be "stricken if it is a legally insufficient basis for precluding a plaintiff from prevailing on its claims." *Town & Country Linen Corp.*, 2020 WL 3472597, at *5. Lastly, whether prejudice "should be a basis for dismissing or opposing the addition of an otherwise valid affirmative defense" is dependent on whether the defense is presented in a timely manner. *GEOMC Co.,* 918 F.3d at 98. Thus, a factually sufficient and legally valid defense shall be allowed if it has been timely filed even if the scope of the litigation would be expanded. *Id*.

## B. Thom Browne's First Affirmative Defense Should Not Be Stricken

In its first affirmative defense, Thom Browne asserts laches, acquiescence, and estoppel. (Answer at 11.) Laches, acquiescence, and estoppel are three distinct defenses,[7] but each requires that the defendant incur prejudice as a result of plaintiff's

---

[7] A defendant asserting the affirmative defense of laches has the burden to establish "[i] that he lacked knowledge that the claim might be asserted against him; [ii] that the plaintiff delayed asserting the claim despite the opportunity to do so; and [iii] that he would be prejudiced if the claim were now allowed to go forward." *Maloul v. New Colombia Resources, Inc.*, No. 15-CV-8710, 2017 WL 2992202, at *6 (S.D.N.Y. July 13, 2017). The affirmative defense of acquiescence requires a showing that: "(1) the senior user actively represented that it would not assert a right or a claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay

action or inaction.  *ProFitness Physical Therapy Center v. Pro-Fit Orthopedic & Sports Physical Therapy P.C.*, 314 F.3d 62, 67 (2d Cir. 2002) ("Findings of delay and prejudice are central to both [acquiescence and laches] defenses"); *CJ Products LLC v. Snuggly Plushez LLC,* 809 F. Supp. 2d 127, 162 (E.D.N.Y. 2011) (one of the three elements of estoppel is undue prejudice).  adidas argues that the asserted defense must be stricken because Thom Browne does not plead that it has suffered undue prejudice.  Thom Browne responds that it has been prejudiced by Plaintiffs' "unreasonable delay in bringing this action" and that a defendant is not required to have expressly used the word "prejudice" to adequately plead the defense.  (Def. Mem. at 10.)  The Court agrees with Thom Browne.

As pled in its first defense, Thom Browne gives a brief history of adidas and Thom Browne's communications regarding Thom Browne's prior use of three horizontal parallel bands on its clothing.  (Answer at 11.)  Thom Browne alleges that in 2007, adidas complained to Thom Browne about its use of the three-stripe design; and, in response, Thom Browne began using four horizontal parallel bands instead of three.  (*Id*.)  From 2009-2018, Thom Browne asserts, adidas did not complain about Thom Browne's use of four horizontal parallel bands on clothing, and there have been no instances of actual confusion between the two brands uses of parallel bands.  (*Id*. at 11-12.)  Therefore, the

---

caused the defendant undue prejudice."  *Dress for Success Worldwide v. Dress 4 Success*, 589 F. Supp.2d 351, 365 (S.D.N.Y. 2008) (quoting *Times Mirror Magazines, Inc. v. Field & Stream Licenses Co.,* 294 F.3d 383, 395 (2d Cir. 2002)).  To succeed on the defense of equitable estoppel, a defendant must establish: (1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice."  *Mindspirit, LLC v. Evalueserve Ltd.,* 470 F. Supp. 3d 366, 382 (S.D.N.Y. 2020) (quoting *Johnson & Johnson v. Actavis Group.*, No. 06-CV-8209, 2008 WL 228061, at *9 (S.D.N.Y. Jan. 25, 2008)).

14

defense concludes, adidas' claims are barred by the doctrines of laches, acquiescence, and estoppel.  (*Id*.at 12.)

Thom Browne has plausibly alleged prejudice sufficient to support its defense of laches, acquiescence, and estoppel.  Courts routinely find that a defendant is prejudiced when it has changed its position based on the other party's not taking action against it.  *See Conopco, Inc. v. Campbell Soup Co.,* 95 F.3d 187, 192 (2d Cir. 1996) ("prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed") (internal quotation marks omitted); *I.O.B. Realty, Inc. v. Patsy's Brand, Inc.*, No. 16-CV-7682, 2017 WL 2168815, at *3 (S.D.N.Y. May 16, 2017) (same); *Satan Wears Suspenders, Inc. v. Jaar*, No. 21-CV-812, 2022 WL 2181449, at *8 (S.D.N.Y. June 16, 2022) (rejecting plaintiff's argument that defendants failed to show that they would have acted differently had plaintiff filed its suit sooner because "[b]y itself, the fact that Defendants have invested considerable energy into their [ ] brand, … is sufficient to show that Defendants may have branded themselves differently had Plaintiff brought forth this action sooner"); *Trustees of Columbia University v. Columbia/HCA Healthcare Corp.,* 964 F. Supp. 733, 753 (S.D.N.Y. 1997) (holding defendant was prejudiced by plaintiff waiting over three and a half years to assert objections or claims against defendant's use of the Columbia name while defendant spent millions of dollars developing programs that featured the Columbia name).

A reasonable inference can be made from Thom Browne's allegations that it would not have changed to, and based its consumer recognition on continuing use of and investment in, a four-stripe mark had adidas complained about it, particularly as adidas had complained about its use of a three stripe mark.  That Thom Browne did not expressly

15

use the word "prejudice" does not undo its demonstration of prejudice through the facts alleged.

Plaintiffs argue that "more is required to show prejudice than the simple fact that the business continued during the period of delay." (Pl. Reply at 7.[8] (quoting *Fourth Toro Family Ltd. Partnership v. PV Bakery, Inc.*, 88 F. Supp. 2d 188, 198 (S.D.N.Y. 2000)).) Thom Browne has not simply alleged the continuation of its business while adidas stood by. Rather, it alleges having stopped use of one mark and started – and literally staked its reputation on – use of another as a result of adidas complaining about the first mark but not the second. The facts alleged provide a sufficient basis to support a finding of prejudice. As there is no dispute as to the legal sufficiency or timeliness of Thom Browne's first asserted defense, the motion to strike it should be denied.

### C. Thom Browne's Ninth Affirmative Defense Should Be Stricken In Part

For its ninth affirmative defense – unjust enrichment – Thom Browne asserts: "At least because adidas suffered no harm or damages, adidas will be unjustly enriched if permitted to recover on its Complaint." (Answer at 13.) This "defense" is nonsensical. Harm (necessary for injunctive relief) and monetary damages, if any, are part of adidas' claims.[9] Unsurprisingly then, unjust enrichment typically appears as a claim, not a defense. In order to establish a claim for unjust enrichment, a party must show that (1) the other party benefited; (2) at the complaining party's expense; and (3) equity and good

---

[8] "Pl. Reply" refers to Plaintiffs' Reply Memorandum In Support Of Adidas's Motion To Dismiss Thom Browne's Counterclaim And Strike Its First, Ninth, And Twelfth Affirmative Defenses at Dkt. 66.

[9] Items 1-3 in the request for relief clause of adidas' Complaint are for injunctive relief. Item 4 has been struck. Items 5-10 are damages related.

16

conscience require restitution.[10]  *Federal Treasury Enterprise Sojuzplodoimport v. Spirits International N.V.*, 400 F. App'x 611, 613 (2d Cir. 2010); *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000).  Thom Browne does not seek restitution of any benefit conferred, and has not plausibly asserted a viable claim or defense of unjust enrichment.

Thom Browne argues that at the motion to dismiss stage, it does not need to prove "how [adidas] may be unjustly enriched" if permitted to recover on its claims and that the issue may properly be revisited after "full discovery has been made."  (Def. Mem. at 12 (citing *Bennett v. Spoor Behrins Campbell & Young*, 124 F.R.D. 562, 563 (S.D.N.Y. 1989)).)  That essentially is an admission that Thom Browne's asserted defense does not give fair notice to adidas of the defense.  Thom Browne is correct that at this stage it need not prove its asserted affirmative defenses, but it still must meet the plausibility requirements as set forth in *Twombly* and *Iqbal*.  Thom Browne's ninth affirmative defense of unjust enrichment does not do so and should be stricken to the extent it invokes unjust enrichment.

To the extent that Thom Browne merely intends to assert that adidas suffered no harm or damages from Thom Browne's conduct, its claim need not be stricken.  Such a defense merely challenges the sufficiency of adidas' claims and poses no prejudice.  *See Alan L. Frank Law Associates, P.C. v. OOO RM Invest*, No. 17-CV-1338, 2021 WL 3269010, at *5 (E.D.N.Y. July 30, 2021) (denying motion to strike affirmative defense that "purported damages lack a basis in fact" in part because plaintiff failed to establish prejudice from including the defense); *Federal Trade Commission v. Unified Global*

---

[10] Both parties invoke the elements required for a claim of unjust enrichment.  Neither cites cases in which the doctrine was asserted as an affirmative defense.

*Group, LLC*, No. 15-CV-0422, 2016 WL 11795487, at *5 (W.D.N.Y. June 20, 2016) (declining to strike affirmative defense for "absence of actual damages" in part because "an affirmative defense that attacks the legal sufficiency of a plaintiff's case is not prejudicial"); *Oliner v. McBride's Industries, Inc.*, 106 F.R.D. 14, (S.D.N.Y. 1985) (denying motion to strike affirmative defense for "absence of any damages" because it, and others, raised factual and legal issues that should be considered on the merits).

Accordingly, Thom Browne's ninth affirmative defense should be stricken except for the portion that reads: "adidas suffered no harm or damages."

**D.      Thom Browne's Twelfth Affirmative Defense Should Be Stricken**

Thom Browne's twelfth affirmative defense asserts aesthetic functionality (Answer at 14), the same doctrine that serves as the basis for Thom Browne's Counterclaim. The defense is predicated on the notion that adidas is claiming rights to the use of stripes in general on apparel and footwear, and not just protection for its Three-Stripe Mark. The Court has already addressed this argument, and the defense fails for the same reasons.[11] Accordingly, it should be stricken.

**CONCLUSION**

For the foregoing reasons, I recommend adidas' motion be GRANTED in part and DENIED in part. Thom Browne's counterclaim should be dismissed with prejudice; its ninth affirmative defense should be stricken in part as set forth above; and its twelfth

---

[11] Neither party argues that the outcome should be any different for Thom Browne's aesthetic functionality defense and its Counterclaim based on the same doctrine. Rather, in addressing Thom Browne's twelfth affirmative defense, both parties simply refer back to the arguments advanced with regard to Thom Browne's Counterclaim. (Pl. Mem. at 9; Def. Mem. at 12; Pl. Reply at 7.)

affirmative defense should be stricken.  Thom Browne's first affirmative defense should not be stricken.

## PROCEDURES FOR FILING OBJECTIONS AND PRESERVING APPEAL

Pursuant to 28 U.S.C. § 636(b)(1) and Rules 72, 6(a), and 6(d) of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days to file written objections to this Report and Recommendation.  Such objections shall be filed with the Clerk of Court, with extra copies delivered to the Chambers of the Honorable Jed S. Rakoff, U.S.D.J., United States Courthouse, 500 Pearl Street, New York, NY 10007, and to the Chambers of the undersigned, United States Courthouse, 500 Pearl Street, New York, NY 10007.  **Failure to file timely objections will result in a waiver of objections and will preclude appellate review.**

Respectfully submitted,

_____
ROBERT W. LEHRBURGER
UNITED STATES MAGISTRATE JUDGE

Dated: September 21, 2022
New York, NY

Copies transmitted to all counsel of record.