UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
┌─────────────────────────────────────┐
│ ADIDAS   AMERICA,   INC.,   and      │
│ ADIDAS AG,                           │
│                                      │
│          Plaintiffs,                 │
│                                      │
│                                      │
│     -v-                              │
│                                      │
│ THOM BROWNE, INC.,                   │
│                                      │
│          Defendant.                  │
└─────────────────────────────────────┘
```

21-cv-5615 (JSR)

OPINION AND ORDER

JED S. RAKOFF, U.S.D.J.

This is a trademark dispute. Plaintiffs are adidas America, Inc. and adidas AG (collectively, "adidas"), two constituent entities of a large firm that produces athletic clothing and accessories. Defendant is Thom Browne, Inc. ("Thom Browne"), a producer of luxury apparel. adidas has trademarked a design that consists of three parallel stripes (the "Three Stripe Mark"). The Complaint alleges that Thom Browne has placed certain striped patterns on items of activewear -- such as sweatpants, hoodies and t-shirts -- that infringe the Three-Stripe Mark.

On October 21, 2022, adidas and Thom Browne filed cross-motions for summary judgment. See ECF Nos. 88, 96. On November 22, 2022, adidas filed a motion to strike Thom Browne's reply statement of objections and responses to adidas's statement of undisputed material facts (the "Reply Statement"). See ECF No. 154 (the motion

to strike); ECF Nos. 152-3 (the Reply Statement). Thereafter, in an Order dated December 2, 2022, the Court denied adidas's motion to strike, denied Thom Browne's motion for summary judgment, and granted adidas's motion for summary judgment in part and denied adidas's motion in part. See ECF No. 156. That Order stated that an opinion would follow explaining the reasons for the Court's rulings. See id. Here is that Opinion.

I.   Background

    adidas is a colossus in the market for activewear. adidas is known by its signature Three-Stripe Mark: three parallel lines, of roughly the same width, placed in close proximity. The Three-Stripe Mark is one of adidas's most valuable assets. Pl's. Statement of Undisputed Material Facts, ECF No. 90 (hereinafter, "adidas SUMF"), at ¶¶ 4-6. adidas invests hundreds of millions of dollars per year into advertising and promoting products that bear the mark as well as the mark itself. Id. at ¶ 6. An example of the Three-Stripe Mark is pictured below:



    Thom Browne is a designer of luxury clothing and accessories. Def's. Statement of Undisputed Material Facts, ECF No. 101

(hereinafter, "TB SUMF"), at ¶ 1. Founded in 2001, Thom Browne began as a boutique in Manhattan's West Village, selling made-to-measure suits by appointment. Id. at ¶ 2. Since then, Thom Browne has flourished. It has opened locations in Tribeca, Tokyo, London, Seoul, Hong Kong, Shanghai, Beijing, and Milan; it now sells its products not only in its own stores but in over 300 locations worldwide, as well as through its website. Id. at ¶¶ 3-5. It also has entered the market for activewear. adidas SUMF, ¶¶ 93-101.

For many years, Thom Browne's designs have featured parallel stripes. One of Thom Brown's most important designs, which it calls its "Grosgrain Signature," involves a striped pattern. Thom Browne describes the Grosgrain as a pattern of white-red-white-blue-white (five stripes); adidas describes it as red-white-blue (three stripes). TB SUMF, ¶ 6; Pl's. Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 95 (hereinafter "adidas Mem. of Law"), at 7. An example of the Grosgrain Signature is pictured below:



In or around 2005, Thom Browne began to use another design
that, adidas contends, resembled adidas's Three-Stripe Mark even
more closely. Thom Brown refers to this design as its "Three-Bar
Signature." TB SUMF, at ¶ 30. Like adidas's Three-Stripe Mark, the
Three-Bar Signature includes three parallel lines of similar width
and in close proximity. Id. at ¶ 31. Thom Browne placed the Three-
Bar Signature on several items of activewear, including t-shirts,
sweatpants, sweatshorts, and hoodies. Id. at ¶ 35; adidas SUMF, ¶
93. An example of the Three-Bar Signature is pictured below:



In May 2007, Vanessa Backman, who was then the adidas employee responsible for the enforcement of adidas's trademarks in the United States, called Thomas Becker, Thom Browne's then-CEO, to express concern about Thom Browne's Three-Bar Signature. TB SUMF, ¶¶ 48, 66-67. In response, Mr. Becker agreed that Thom Browne would cease to use the Three-Bar Signature. <u>Id.</u> at ¶ 71.

Thom Browne (the man, not the company) then decided to use <u>four</u> bars rather than three. <u>Id.</u> at ¶ 94. Thom Browne dubs this innovation the "Four-Bar Signature." Thom Browne asserts that Mr. Becker attempted to apprise adidas of its plan to use the Four-Bar Signature but never got a response. <u>Id.</u> An example of the Four-Bar Signature is pictured below:



    Thom Browne debuted the Four-Bar Signature at a fashion show
in Fall 2008. Id. at ¶ 101. Beginning in 2009, Thom Browne sold
products featuring the Four-Bar Signature in several outlets,
including prominent department stores such as Barney's, Bergdorf
Goodman, and Nordstrom, as well as online. Id. at ¶¶ 106-118.
Beginning in 2010, Thom Browne sold activewear featuring the Four-
Bar Signature. Id. at ¶ 107.

    Between 2011 and 2018, Thom Browne continued to expand into
the market for activewear. In 2015, Thom Browne's board identified
"sportswear" as "the biggest near-term opportunity for growth . .
. ." adidas SUMF, ¶ 77. In 2017, Mr. Browne affirmed that he wanted
"to create clothes that accompanied men and women in every moment
of their life" and that his company's sportswear segment was
"rapidly growing." Id. at ¶¶ 78-79. Thom Browne's activewear sales
(expressed as a percentage of its total sales within the U.S.)

grew from 15% in 2011 to 27.5% in 2018. Id. at ¶ 101. During this period, some of Thom Browne's activewear products featured the Four-Bar Signature. Id. at ¶¶ 93-100.[1]

adidas claims to have learned of Thom Browne's use of the Four-Bar Signature in February 2018. Id. at ¶ 103. In early 2018, Thom Browne applied to trademark the Grosgrain Signature within Europe. Id. at ¶ 106. adidas noticed this application, and the similarity between the Grosgrain Signature and adidas's Three-Stripe Mark prompted adidas to investigate Thom Browne's product offerings. Id. at ¶ 107. By this point, Thom Browne was selling nearly 5 million items of activewear featuring the Four-Bar Signature annually. Id. at ¶ 101.

adidas objected to Thom Browne's use of the Four-Bar Signature in discussions with Thom Browne's counsel in July 2018 and in October 2018. Id. at ¶ 113. During these discussions, the parties attempted to negotiate a settlement. Id. Negotiations and a subsequent attempt at mediation dragged on over the next three years.

When it appeared that the mediation process had stalled, adidas initiated this action by filing the Complaint on June 28, 2021. Id. at ¶ 130. The Complaint alleges that Thom Browne has infringed the Three-Stripe Mark by "offering for sale and selling

---

[1] Before 2013, Thom Browne did not annually sell more than a few hundred of activewear items bearing the Four-Bar Signature. Id. at ¶¶ 93-99.

athletic-style apparel and footwear featuring two, three, or four parallel stripes in a manner that is confusingly similar to adidas's Three-Stripe Mark . . . ." Compl., ECF No. 1, at ¶ 4. In addition to monetary relief, adidas seeks an injunction preventing Thom Browne from selling any accused product that infringes the Three-Stripe Mark. Id. at 25.

In its Answer, Thom Browne asserted several affirmative defenses, two of which are relevant here. See Def's. Answer, ECF No. 51, at 11, 14. Thom Browne's first affirmative defense asserts that adidas's claims are barred by laches, acquiescence and estoppel. Thom Browne's fourteenth affirmative defense asserts that adidas abandoned the Three-Stripe Mark.

The parties then filed cross-motions for summary judgment with respect to these two affirmative defenses. adidas seeks summary judgment on Thom Browne's first and fourteenth affirmative defenses; Thom Browne seeks summary judgment on its first affirmative defense.

II.  adidas's Motion to Strike

As part of the reply papers submitted on behalf of its motion for summary judgment, Thom Browne propounded a set of objections and response to adidas's statement of additional material facts. See ECF Nos. 152-3. adidas moved to strike this Reply Statement,

asserting that Local Rule 56.1 prohibits the submission of such statements.

While Local Rule 56.1 does not expressly permit parties to submit reply statements of undisputed material facts (or objections thereto), it does not prohibit such statements either. See L.R. 56.1; Cap. Recs., LLC v. Vimeo, LLC, No. 09-CV-10101 (RA), 2018 WL 4659475, at *1 (S.D.N.Y. Sept. 7, 2018) ("Local Civil Rule 56.1 does not provide for a 'reply' in further support of a Rule 56.1 statement of undisputed facts. Plaintiffs, meanwhile, are correct that the Rule does not prohibit such replies."); Skoczylas v. United States, 906 F. Supp. 2d 161, 166 (E.D.N.Y. 2012) ("Although Local Civil Rule 56.1 does not require a reply statement of facts by the movant, it also does not forbid it."). Here, since adidas was using its 56.1 response to Thom Browne's 56.1 statement as an opportunity to propound assertions of allegedly undisputed material not contained in Thom Browne's statement, it is only fair for Thom Browne to have a chance to respond to those additional assertions. Accordingly, the Court denies adidas's motion to strike.

III. Summary Judgment

The parties have filed cross-motions for summary judgment on two of Thom Browne's affirmative defenses. Thom Browne's first affirmative defense asserts that adidas's claims are barred by

laches, acquiescence, and estoppel. Thom Browne's fourteenth affirmative defense asserts that adidas has abandoned the Three-Stripe Mark. Collectively, then, there are four defenses asserted under these three headings, acquiescence, estoppel, abandonment, and laches, which the Court considers in turn.

"Summary judgment is proper when, after drawing all reasonable inferences in favor of a non-movant, no reasonable trier of fact could find in favor of that party." Heublein, Inc. v. United States, 996 F.2d 1455, 1461 (2d Cir. 1993); see also Fed. R. Civ. P. 56(a) ("The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."). "A fact is 'material' for these purposes if it 'might affect the outcome of the suit under the governing law.'" Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 69 (2d Cir. 2001) (quoting Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Id. "Genuine issues of fact are not created by conclusory allegations." Heublein, 996 F.2d at 1461.

For reasons explained below, the Court finds that no reasonable trier of fact could find in favor of Thom Browne on its defenses of acquiescence, estoppel, and abandonment. But the Court does find that there are genuine disputes of material fact

concerning Thom Browne's laches defense. Thus, the Court enters summary judgment for adidas dismissing Thom Browne's defenses of acquiescence, estoppel, and abandonment but denies summary judgment to either party on Thom Browne's laches defense, which therefore remains in the case.

A. Acquiescence

The first portion of Thom Browne's first affirmative defense asserts that adidas acquiesced in Thom Browne's conduct. Acquiescence bars a claim if "(1) the plaintiff actively represented that it would not assert a right or claim; (2) the delay between the active representation and assertion of the right or claim was not excusable; and (3) the delay caused the defendant undue prejudice." Times Mirror Mags., Inc. v. Field & Stream Licenses Co., 294 F.3d 383, 395 (2d Cir. 2002).

Here, the undisputed facts show that adidas did not make any active representation that it would not pursue a claim against Thom Browne. adidas and Thom Browne were in contact with each other only at two periods in time: first, in 2007, when adidas contacted Thom Browne to voice its concerns about the Three-Bar Signature; second, in 2018, when adidas contacted Thom Browne to raise concerns about the Grosgrain Signature and the Four-Bar Signature. At neither of these junctures did adidas actively represent to Thom Browne that it would not pursue an infringement claim. At most, adidas failed to respond to Thom Browne's inquiries. adidas

SUMF, at ¶¶ 29-30. But silence is not an active representation. See Fendi Adele S.R.L. v. Filene's Basement, Inc., 696 F. Supp. 2d 368, 380 (S.D.N.Y. 2010) ("[S]ilence is far from active acquiescence."). Since there is no genuine dispute that an essential element of Thom Browne's acquiescence defense is unsatisfied, the Court enters summary judgment in favor of adidas dismissing Thom Browne's acquiescence defense.

B.  Estoppel

Thom Browne's defense of estoppel fails for similar reasons. Estoppel bars a claim if three things are present: "(1) a misrepresentation by the plaintiff, (2) reasonable reliance by the defendant, and (3) prejudice." Veltri v. Bldg. Serv. 32B-J Pension Fund, 393 F.3d 318, 326 (2d Cir. 2004). Since there is no genuine dispute that adidas did not make an affirmative misrepresentations concerning the assertion of its claim, the Court enters summary judgment in favor of adidas dismissing this affirmative defense as well.

C.  Abandonment

Thom Browne's fourteenth affirmative defense asserts that adidas abandoned the Three-Stripe Mark by "fail[ing] to challenge the extensive third-party use of stripes, including three parallel stripes, on apparel and footwear . . . ." Def's. Mem. of Law in Opposition to Pl's. Mot. for Partial Summ. J., ECF No. 122, at 25. A trademark owner's failure to police the marketplace will indeed

bar an infringement claim if the facts disclose "either the owner's intent to abandon the mark, or a course of conduct on the part of the owner causing the mark to become generic or lose its significance as a mark." Hermes Int'l v. Lederer de Paris Fifth Ave., Inc., 219 F.3d 104, 110 (2d. Cir. 2000).

But adidas has not stood by and let the Three-Stripe Mark become common property. To the contrary, it has gone to great lengths to secure the Three-Stripe Mark. Since 2008, adidas has sent over 200 cease-and-desist letters, has entered into more than 200 settlement agreements, and has filed more than 90 lawsuits alleging infringement or dilution of the Three-Stripe Mark. adidas SUMF, at ¶¶ 163-64. Moreover, adidas pours hundreds of millions of dollars per year into marketing and promotion activities reliant on the Three-Stripe Mark -- investment that would make no sense if adidas intended to abandon the Three-Stripe Mark. Id. at ¶ 6. Unsurprisingly, then, the Three-Stripe Mark has not lost its significance. Instead, it is "legendary" and "iconic": a "signature" of adidas's brand. Id. at ¶¶ 9, 11, 13. Thus, there is no genuine dispute of material fact that neither of the two disjunctive conditions of Thom Browne's abandonment defense are satisfied. The Court therefore awards summary judgment in favor of adidas dismissing this defense as well.

D.  Laches

Thom Browne's defense of laches is a different matter. There are three elements of laches: "(1) the plaintiff knew of the defendant's misconduct; (2) the plaintiff inexcusably delayed in taking action; and (3) the defendant was prejudiced by the delay.'" Ikelionwu v. United States, 150 F.3d 233, 237 (2d Cir. 1998).

1. Knowledge

For purposes of laches, knowledge can be either actual or constructive. See Black Diamond Sportswear, Inc. v. Black Diamond Equip., Ltd., No. 06-3508-CV, 2007 WL 2914452, at *3 (2d Cir. Oct. 5, 2007) ("A trademark owner is chargeable with such knowledge as he might have obtained upon [due] inquiry."). Constructive knowledge exists when "the facts already known to [the trademark-holder] were such as to put upon a man of ordinary intelligence the duty of inquiry," Perfect Pearl Co. v. Majestic Pearl & Stone, Inc., 887 F. Supp. 2d 519, 545 (S.D.N.Y. 2012), and when a reasonable inquiry "would . . . have discovered anything actionable." Cesari S.r.L. v. Peju Province Winery L.P., No. 17 CIV. 873(NRB), 2022 WL 3082960, at *11 (S.D.N.Y. Aug. 3, 2022).

Such knowledge is deemed to exist, and "the laches clock begins to run," when the plaintiff knew or should have known that it "had a provable infringement claim." Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co., 897 F.3d 413, 419 (2d Cir. 2018). This occurs when "the likelihood of [consumer] confusion looms

large." ProFitness Physical Therapy Ctr. v. Pro-Fit Orthopedic & Sports Physical Therapy P.C., 314 F.3d 62, 68 (2d Cir. 2002).

The key question is whether adidas knew or should have known that it had a provable infringement claim against Thom Browne during or before 2012. There is a presumption that laches bars a trademark infringement claim when the plaintiff files a complaint at least six years after learning that it had a provable claim. See Excelled Sheepskin, 897 F.3d at 419. Moreover, the laches clock is stopped during good-faith settlement negotiations. MidCap Bus. Credit, LLC v. MidCap Fin. Tr., No. 21 CIV. 7922 (AKH), 2022 WL 684756, at *5 (S.D.N.Y. Mar. 8, 2022). Since adidas filed the Complaint in 2021, and the parties attempted to negotiate a settlement between 2021 and 2018, laches is presumed to attach if adidas knew or should have known that it had a provable infringement claim against Thom Browne during or before 2012.

   i.   Actual Knowledge

 adidas contends that there is no evidence that it actually knew that it had a provable infringement claim against Thom Browne during or before 2012. While Thom Browne asserts that it "shatters credibility" for adidas to claim that did not actually know that Thom Browne used the Four-Bar Signature on activewear during or before 2012, Def. Mem. of Law in Supp. of Mot. for Summ. J., ECF No. 98 (hereinafter, "TB Mem. of Law"), at 16, Thom Browne does not cite any facts that establish such knowledge. Thus, this is

merely a "conclusory allegation" that does not create genuine dispute of material fact, Heublein, 996 F.2d at 1461, and since Thom Browne bears the burden of proof with respect to its affirmative defense of laches, if this were all, adidas would be entitled to summary judgment dismissing the defense.

ii.   Constructive Knowledge

However, this is not all. The closer issue is whether adidas should have known that it had a provable infringement claim in 2012 or earlier. It is undisputed that Thom Browne sold activewear bearing the Four-Bar Signature during this period of time. See adidas SUMF, ¶¶ 95-97 (conceding that Thom Browne sold hundreds of items of activewear bearing the Four-Bar Signature in both 2011 and 2012). But the parties dispute whether the facts known to adidas placed it under a duty to find the accused products and whether adidas would have found the accused products if it had taken reasonable efforts.

Thom Browne also argues that if adidas had taken reasonable efforts to monitor Thom Browne's products, it would have found the Four-Bar Signature on items of activewear in the period between 2006 and 2012. Activewear bearing the Four-Bar Signature was on display at Thom Browne's store in Tribeca beginning in 2010. TB SUMF, at ¶ 107. If adidas had sent investigators to that store, Thom Browne says, it would have found the accused products easily.

adidas disputes both of Thom Browne's contentions. It says, first, that it was under no duty to monitor Thom Browne's operations through 2010, when Thom Browne began to place the Four-Bar Signature on items of activewear. adidas Mem. of Law, at 14. In 2006, when adidas first discovered a Thom Browne product that it believed infringed the Three-Stripe Mark, adidas did not consider Thom Browne to be a direct competitor. Thom Browne was a small purveyor of high-end tailored clothing, not a major player in the market for activewear. Moreover, adidas was only aware that Thom Browne had used the Three-Bar Signature on a suit jacket. This knowledge, adidas contends, was sufficiently removed from a provable infringement claim that it did not place adidas under a duty to monitor Thom Browne's products.

adidas also claims that it would not have discovered Thom Browne's infringement through reasonable inquiry. Between 2009 and 2012, activewear bearing the Four-Bar Signature accounted for no more than 5% of Thom Browne's total U.S. sales. adidas SUMF, ¶¶ 94-98. Moreover, during this period, Thom Browne only promoted activewear bearing the Four-Bar Signature through its Spring/Summer 2010 Menswear Fashion Show, two online articles, and a video interview with Mr. Browne. Pl's. Mem. of Law in Opposition to Def. Mot. for Summary Judgment, ECF No. 115, (hereinafter, "adidas Opposition"), at 11. Thus, in order to find the accused

products, adidas asserts, adidas would have had to "find a needle in a haystack." Id. at 10.

The Court finds that there is a genuine dispute of material fact concerning whether adidas should have known that it had a provable infringement claim during or before 2012. On the one hand, Thom Browne's overall sales and its sales of activewear during this period were small. Additionally, because Thom Browne was, during this time, primarily a purveyor of tailored clothing, it was reasonable for adidas to spend less effort monitoring Thom Browne than it would have spent on one of its closer competitors. And even if adidas would have discovered any of the accused products, it is unclear whether the likelihood of confusion between those products and adidas's own "loomed large" at the time. On the basis of these facts, a reasonable jury could find that adidas need not have known that it had a provable infringement claim during or before 2012.

On the other hand, precisely because Thom Browne sold so few items, it would not have taken a lot of effort for adidas to sort through Thom Browne's wares to find activewear bearing the Four-Bar Signature. And even though Thom Browne's main products at the time were items of tailored clothing, adidas was sufficiently concerned about Thom Browne's use of the Three-Bar Signature on tailored clothing to insist that Thom Browne cease using that design. On the basis of these facts, a reasonable jury could find

that adidas should have known that it had a provable infringement claim during or before 2012.

2. <u>Inexcusable Delay</u>

This genuine dispute of material fact prevents summary judgment in favor of Thom Browne. However, summary judgment in favor of adidas might still be appropriate, for it is possible that Thom Browne cannot satisfy at least one of the remaining elements of laches <u>regardless</u> of how the dispute about adidas's knowledge is to be resolved. Thus, the Court now considers the second element of Thom Browne's laches defense, which is that adidas unreasonably delayed in taking action.

This element of Thom Browne's defense turns on when adidas should have known that it had a provable infringement claim. As explained above, a trademark owner's delay is presumptively <u>unreasonable</u> if it exceeds six years (setting aside time spent in negotiating a settlement in good faith). <u>See</u> <u>Excelled Sheepskin</u>, 897 F.3d at 419. Such delay is also presumptively <u>reasonable</u> if it does not exceed six years (again, setting aside time for negotiations). See <u>Gross v. Bare Escentuals Beauty, Inc.</u>, 641 F. Supp. 2d 175, 196 (S.D.N.Y. 2008) ("There is a presumption against laches where the lawsuit was initiated within the applicable statute of limitations."). Thus, if adidas should have known that it had a provable infringement claim during or before 2012, its delay in filing the Complaint was presumptively unreasonable. And

assuming, for sake of argument, that the presumption applies, adidas does not purport to have overcome it. So the genuine dispute concerning when adidas should have known it had a provable infringement claim infects this element of Thom Browne's laches defense as well. Summary judgment therefore cannot be awarded to adidas on the ground that this element of Thom Browne's laches defense is indisputably unsatisfied.

### 3. Prejudice

The final element of laches is "material prejudice attributable to [plaintiff]'s delay." Piano Factory Grp., Inc. v. Schiedmayer Celesta GmbH, 11 F.4th 1363, 1375 (Fed. Cir. 2021). Prejudice can be either evidentiary -- which occurs when the plaintiff's delay produces "lost, stale, or degraded evidence, or witnesses whose memories have faded," Eat Right Foods Ltd. v. Whole Foods Mkt., Inc., 880 F.3d 1109, 1120 (9th Cir. 2018) -- or economic, which occurs when the defendant "changed [its] position in a way that would not have occurred if the plaintiff had not delayed," Conopco, Inc. v. Campbell Soup Co., 95 F.3d 187, 192 (2d Cir. 1996).

### i.  Evidentiary Prejudice

Thom Browne argues that it is has suffered evidentiary prejudice because three kinds of evidence have been lost. TB Mem. of Law, at 24-25. First, various records and documents relating to Thom Browne's sales since 2007, such as certain of Thom Browne's

financial records, have been lost. Second, Thom Brown's former CFO, Bob Henley, died in 2019. Third, the memory of Ms. Backman, adidas's in-house counsel who was responsible for defending its Three-Stripe Mark in North America and interacting with Thom Browne regarding the same, has degraded over time. While Thom Browne does not specify exactly how this evidence is relevant to its defense, Thom Browne's implicit suggestion appears to be that this evidence is relevant to Thom Browne's affirmative defense of laches. If Thom Browne had access to the lost records and documents, and if Mr. Henley were still alive, Thom Browne would be better able to prove that it suffered economic prejudice as a result of adidas's delay. Meanwhile, if Ms. Backman's memory were fresher, Thom Browne would be better able to prove that adidas knew or should have known of Thom Browne's allegedly infringing activities prior to 2012.

This evidence, however, is irrelevant to Thom Browne's assertion of evidentiary prejudice. The evidence alleged to be lost is relevant only to Thom Browne's defense of laches. But evidence that gives rise to prejudice must concern a substantive defense to an infringement claim. See Metso Minerals, Inc. v. Powerscreen Int'l Distrib. Ltd., 833 F. Supp. 2d 321, 329 (E.D.N.Y. 2011) ("Evidentiary prejudice must consist of some separate disadvantage resulting from the delay . . . that prevents a party from proving a separate claim or defense."). Thus, there is no

genuine dispute of material fact that Thom Browne did not suffer evidentiary prejudice.

ii.   Economic Prejudice

Thom Browne also argues that it suffered economic prejudice. Thom Browne claims that it invested heavily in the Four-Bar Signature. TB Mem. of Law, at 22. Almost 40% of Thom Browne's products carry the Four-Bar Signature, TB SUMF, at ¶ 153, and Thom Browne's CFO testified that changing the company's designs that carry four stripes would come at "huge cost." TB SUMF, at ¶ 154. If adidas had asserted its claim earlier, Thom Browne claims, it could have foregone much of its investment in these designs and therefore would stand to lose substantially less as a result of adidas's claim.

adidas has two responses. First, it argues that that the Thom Browne has not asserted any cognizable economic prejudice. adidas argues that merely continuing to use a mark is not an investment whose loss gives rise to prejudice. See I.O.B. Realty, Inc. v. Patsy's Brand, Inc., No. 16 CIV. 7682 (LLS), 2017 WL 2168815, at *3 (S.D.N.Y. May 16, 2017) ("The only prejudice cited by Patsy's Brand is that for the last ten years it used the mark PATSY'S OF NEW YORK. This is not sufficient to establish prejudice because prejudice ensues when a defendant has changed his position in a way that would not have occurred if the plaintiff had not delayed."); George Nelson Found., 12 F.

Supp. 3d at 656 ("There is no evidence Defendant expanded its business or increased its promotion of the products because Plaintiff failed to assert its rights earlier."); Tap Publications, Inc. v. Chinese Yellow Pages (New York) Inc., 925 F. Supp. 212, 223 (S.D.N.Y. 1996) ("Tap does not argue that it has expanded its production, distribution, or advertising relying on the mark."); Weight Watchers Int'l, Inc. v. Stouffer Corp., 744 F. Supp. 1259, 1287 (S.D.N.Y. 1990) ("That defendant continued to spend money on advertising which exploited the Weight Watchers mark is not prejudicial reliance."). And, adidas claims, the undisputed material facts do not show that Thom Browne made any investment in the Four-Bar Signature that exceeded using those designs on the company's products.

Second, adidas argues that Thom Browne has not asserted material economic prejudice with respect to using the Four-Bar Signature on activewear. adidas Opposition, at 14. adidas only seeks an injunction forbidding Thom Browne from using the Four-Bar Signature on activewear.[2] Compl., at 25. This injunction would not prevent Thom Browne from using the Four-Bar Signature on other products. Thus, any harm resulting from losing the opportunity to use the Four-Bar Signature on non-activewear does not establish material economic prejudice.

---

[2] Additionally, adidas is challenging some uses of the Grosgrain on activewear. adidas Mem. of Law, at 10.

The Court is not convinced by adidas's arguments. First, Thom Browne did more than merely use the Four-Bar Signature. It also promoted the Four-Bar Signature through fashion shows and advertising campaigns. TB SUMF, at ¶¶ 20, 119-137. Losing the return from this investment is cognizable economic prejudice. See Bridgestone/Firestone Rsch., Inc. v. Auto. Club De L'Quest De La France, 245 F.3d 1359, 1363 (Fed. Cir. 2001) ("Economic prejudice arises from investment in and development of the trademark, and the continued commercial use and economic promotion of a mark over a prolonged period adds weight to the evidence of prejudice."); Gucci Am., Inc. v. Guess?, Inc., 868 F. Supp. 2d 207, 244 (S.D.N.Y. 2012) (finding economic prejudice because the defendant "took affirmative steps to increase its use of the mark during and in reliance on [plaintiff's] period of delay," and because "unwinding those actions would require [defendant] to reorganize its business or reeducate the public as to its product if restrained from using the mark"); Satan Wears Suspenders, Inc. v. Jaar, No. 21-CV-812, 2022 WL 2181449, at *8 (S.D.N.Y. June 16, 2022) ("By itself, the fact that Defendants have invested considerable energy into their [ ] brand . . . is sufficient to show that Defendants may have branded themselves differently had Plaintiff brought forth this action sooner.").

Second, even though Thom Browne has used the Four-Bar Signature on products that are not activewear, it is undisputed that Thom Browne uses the Four-Bar Signature on activewear as well. (Indeed, that is the crux of adidas's Complaint.) And adidas concedes that Thom Browne derives substantial revenues from using the Four-Bar Signature on activewear. See adidas SUMF, at ¶ 101 (stating that Thom Browne sold nearly five million items of activewear bearing the Four-Bar Signature). Thus, even though reports of the Four-Bar Signature's overall importance overstate the magnitude of Thom Browne's economic prejudice, there is no serious question that Thom Browne would be harmed by an injunction forbidding it to use the Four-Bar Signature on activewear.

The foregoing considerations suffice to create (at the very least) a genuine dispute of material fact concerning whether Thom Browne suffered economic prejudice. Because there is a genuine dispute of material fact on this and the other elements of Thom Browne's laches defense, summary judgment in favor of adidas must be denied.

IV. Conclusion

For the foregoing reasons, the Court hereby reconfirms its "bottom line" Order of December 2, 2022. Specifically, the Court denies adidas's motion to strike. The Court denies Thom Browne's motion for summary judgment, and the Court grants that of adidas in part and denies it in part. In particular, the Court enters

summary judgment in favor of adidas dismissing Thom Browne's fourteenth affirmative defense asserting abandonment and dismisses the portions of Thom Browne's first affirmative defense that assert acquiescence and estoppel. Finally, the Court denies summary judgment to either party on the portion of Thom Browne's first affirmative defense that asserts laches.

Counsel are reminded that trial of this case will convene at 9:30 AM on January 3, 2023.

SO ORDERED.

New York, NY

December *16*, 2022

JED S. RAKOFF, U.S.D.J.