**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| ADIDAS AMERICA, INC., an Oregon corporation; and ADIDAS AG, a foreign entity,<br><br>         Plaintiffs,<br><br>  v.<br><br>THOM BROWNE INC., a Delaware corporation,<br><br>         Defendant. | No. 1:21-cv-05615-JSR-RWL |

<u>**JOINT PRETRIAL CONSENT ORDER**</u>

Pursuant to Fed. R. Civ. P. 26(a)(3) and this Court's Individual Rules of Practice, Plaintiffs adidas America, Inc. and adidas AG (collectively, "adidas") and Defendant Thom Browne, Inc. ("Thom Browne") jointly submit this Pretrial Consent Order.

**1. Joint Overview of the Case**

This is a trademark infringement, dilution, and unfair competition case brought under federal and state law. adidas alleges that Thom Browne's use of certain presentations of parallel stripes on certain types of apparel and footwear (the "Accused Products") infringes and dilutes adidas's "Three-Stripe Mark" and constitutes unfair competition. Specifically, adidas alleges that Thom Browne's "Four-Bar" and "Grosgrain" designs (together adidas refers to these as the "Accused Designs") violate adidas's trademark rights. adidas seeks damages in the form of a reasonable royalty, a disgorgement of Thom Browne's profits on the Accused Products, a permanent injunction, punitive damages, and adidas's attorneys' fees and costs.

Thom Browne maintains that it has been using its Four-Bar and Grosgrain Signatures on clothing since before 2009, after adidas demanded it cease using three parallel stripes on Thom

PAGE 1 -   JOINT PRETRIAL CONSENT ORDER

Browne sport coats in 2007. Thom Browne asserts that given the passage of time adidas' claims are barred by the equitable doctrine of laches. In addition, Thom Browne asserts that its designs do not infringe, nor do they dilute any of adidas' purported marks. Thom Browne also asserts that the Four-Bar and Grosgrain Signatures have become Thom Browne brand identifiers over the last eleven years or more. As such, Thom Browne denies that its use of the Accused Signatures is an attempt to pass off its goods as adidas' goods—and adidas has no evidence to show otherwise. Finally, Thom Browne denies that adidas has suffered any harm.

With regard to the defense of laches, adidas denies that it unreasonably delayed in objecting to Thom Browne's use of the Accused Designs[1] on the Accused Products. adidas also asserts that Thom Browne has not suffered any material prejudice as the result of any delay. adidas also contends that Thom Browne progressively encroached into adidas's core market by expanding its use of the Accused Designs on sportswear and activewear. Finally, adidas argues that Thom Browne exhibited bad faith and willful infringement by continuing to add even more athletic products bearing the Accused Designs (such as its compression collection) after adidas objected in May 2018.

2. **Particularized Description of Each Party's Claims**

A. **adidas's Claims**

This is an action at law and in equity for trademark infringement, dilution by blurring, and unfair competition arising under the Trademark Act of 1946, 15 U.S.C. §§ 1051 *et seq.* ("Lanham Act"); the fair business practices and unfair and deceptive trade practices acts of New

---

[1] As explained in its motion in limine, adidas contends that Thom Browne did not adequately plead laches with regard to the Grosgrain design and that laches may only be asserted at trial with regard to the Four-Bar design. By referencing "Accused Designs" (plural) in this Order, adidas does not intend to waive its argument concerning the limitation on the scope of Thom Browne's laches defense.

York; and New York common law. Specifically, adidas's First Claim for Relief alleges trademark infringement under 15 U.S.C. § 1114; adidas's Second Claim for Relief alleges unfair competition under 15 U.S.C. § 1125(a); adidas's Third Claim for Relief alleges trademark dilution by blurring[2] under 15 U.S.C. § 1125(c); adidas's Fourth Claim for Relief alleges injury to business reputation and dilution under N.Y. Gen. Bus. Law § 360-1; adidas's Fifth Claim for Relief alleges trademark infringement and unfair competition under New York common law.

Among other relief, adidas asks this Court to: (a) permanently enjoin Thom Browne from distributing, marketing, or selling activewear (i.e., athletic-styled apparel and footwear) using or bearing two, three, or four parallel stripes; (b) award adidas monetary damages and to treble that award; (c) require Thom Browne to disgorge all of its profits from its sales of the Accused Products; (d) award adidas punitive damages; and (e) award adidas its reasonable attorneys' fees and costs.

### B. Thom Browne's Remaining Affirmative Defense

No Thom Browne counterclaim remains to be tried.

Thom Browne maintains the affirmative defense that adidas' claims in this action are barred by the doctrine of laches.

### 3. Facts on Which the Parties Agree and Other Stipulations

#### A. Stipulations

##### 1. Jurisdiction

The parties stipulate that: (a) this Court has subject matter jurisdiction over this action under 15 U.S.C. § 1121 and under 28 U.S.C. §§ 1331, 1338, & 1367; (b) this Court has personal

---

[2] adidas does not allege dilution "by tarnishment" as described in 15 U.S.C. § 1125(c)(2)(C).

jurisdiction over Thom Browne, Inc.; and (c) venue is proper in this District pursuant to 28 U.S.C. §§ 1391(b)(1), (b)(2), & (c)(2).

## 2. Authenticity

The parties stipulate to the authenticity of all documents listed in the parties' respective exhibit lists.

## 3. Confusion

adidas stipulates that it does not allege and will not argue to the jury that a likelihood of confusion exists at the point of sale; instead, adidas alleges and will argue to the jury only that Thom Browne's use of the stripe designs on the Accused Products creates a likelihood of initial-interest and/or post-sale confusion. Thom Browne stipulates that it will not seek to admit or rely on any point-of-sale confusion survey performed by its expert Brian Sowers.

## 4. Third-Party Collaborations

Both parties agree not to introduce evidence or discuss before the jury the recent controversies involving Kanye and Balenciaga. However, both parties reserve the right to present evidence related to adidas's collaborations with Kanye and Balenciaga. adidas further reserves the right to present evidence in rebuttal if adidas believes it needs to explain the current status of either collaboration in response to evidence elicited by Thom Browne.

## 5. Accused Products

adidas stipulates that it will not seek to collect damages or profits from sales of the "Missing Colorways." Thom Browne agrees that any injunction applying to the Accused Products will apply equally to the missing colorways of the Accused Products.

6. **Damages**

To the extent that the jury finds liability, and also determines that adidas has been harmed due Thom Browne's alleged actions, the parties agree that if adidas and Thom Browne would have agreed to license the asserted adidas trademarks at the time infringement began, they would have agreed to a royalty rate of 8% for wholesale sales and 3.1% for retail and e-commerce sales.

adidas and Thom Browne agree that their respective damages experts may rely on Thom Browne financial documents, within the scope of the opinions set forth in their respective reports, without needing a Thom Browne fact witness first to lay foundation. The parties also agree that Thom Browne's damages expert may testify about cost-related information learned from Thom Browne, Inc., as disclosed and set forth in his expert reports, without needing a Thom Browne fact witness first to lay foundation for that cost-related information, subject, of course, to cross-examination of Thom Browne's damages expert on these issues by adidas. Notwithstanding these agreements, the parties reserve all rights with regard to the appropriateness and basis for any disgorgement award.

7. **Exchange of Exhibits and Demonstratives**

The parties agree to exchange a list of exhibits by 2:30PM the calendar day before anticipated testimony from the identified witness that a party wishes to call as a direct witness.

The parties agree to exchange demonstratives for such witnesses (or for opening statements or closing arguments) by 8:00PM the calendar day before anticipated use. The parties agree to exchange native PowerPoint files without notes, but including any animations intended to be used during presentation to the jury.

The parties agree to have a standing meet-and-confer at 9:00PM to attempt to resolve any objections to the proposed exhibits or demonstratives.

B. **Agreed-Upon Statement of Facts**

The parties agree on the following facts:

1. Plaintiff adidas AG is a joint stock company organized and existing under the laws of the Federal Republic of Germany, having its office and principal place of business at Postach 11230, D-91072 Herzogenaurach, Federal Republic of Germany.

2. Plaintiff adidas America, Inc. is a corporation organized and existing under the laws of the State of Oregon, having its principal place of business at 5055 N. Greeley Avenue, Portland, Oregon 97217.

3. Defendant Thom Browne, Inc. is a corporation organized and existing under the laws of the State of Delaware, and has its principal place of business at 240 W. 35th Street, New York, New York 10001.

4. Thom Browne advertised, marketed, offered for sale, and sold the Accused Products in the United States, including in the State of New York.

5. adidas objected to Thom Browne's use of three parallel stripes on its products in May 2007.

6. adidas first objected to Thom Browne's use of the Grosgrain and Four-Bar designs in May 2018.

7. Between May 2018 and the date this action was filed by adidas in June 2021, the parties were engaged in good-faith settlement negotiations.

4. **Parties' Contentions[3] Concerning the Disputed Facts**

   **A.  adidas's Contentions**

adidas's infringement and unfair competition claims turn on the question of whether Thom Browne's use of the stripe marks on the Accused Products creates a likelihood of initial-interest and/or post-sale confusion. That assessment will be made by the jury as it considers the relevant[4] "Polaroid" factors:

(1) the strength of the Three-Stripe Mark;
(2) the similarity of the parties' marks;
(3) the proximity and similarity of the products;
(4) evidence of actual consumer confusion;
(6) evidence that Thom Browne's mark was adopted in bad faith;
(7) the respective quality of the products; and
(8) the sophistication of consumers in the relevant market.

At trial, adidas will present substantial evidence on each of the relevant *Polaroid* factors. Conceptually, the Three-Stripe Mark is strong because it is arbitrary. With regard to commercial strength, adidas will show consistent use of the Three-Stripe Mark over many decades, billions of dollars in sales of both apparel and footwear bearing the mark, billions of dollars of advertising and promotion featuring the mark, and substantial unsolicited media surrounding the mark.

While Thom Browne's stripe marks have either one more or one less stripe than the Three-Stripe Mark, they are extremely similar when viewed in the marketplace by consumers.

---

[3] The following is each party's high-level summary of their respective factual contentions and certain key evidence and testimony supporting those contentions. It is not intended to be a comprehensive summary of all of the evidence on which each party will rely, and nothing in this statement should be construed as a waiver of any of adidas's claims or contentions or Thom Browne's defenses or contentions.

[4] Some of the *Polaroid* factors are not relevant (e.g., whether adidas will "bridge the gap") and others are of less importance – if not entirely irrelevant – in a case involving initial-interest and post-sale confusion (e.g., channels of trade and relative quality of the products).

This fact is evidenced by the surveys conducted by expert witness Hal Poret of approximately 1,800 consumers of the type of apparel and footwear accused of infringement in this case, and will be corroborated by the testimony of Dr. Erich Joachimsthaler, an expert in marketing and consumer psychology. As one court explained: "Although three stripes obviously do not equal four stripes, the issue is not simply the number of stripes. Instead, the issue is whether the total effect of the allegedly infringing design is likely to cause confusion in the minds of an ordinary purchaser." *adidas AG v. Target Corp.*, 228 F. Supp. 2d 1192, 1211 (D. Or. 2002). Thom Browne's use of its red-white-blue "flag" or its square label with four skinny lines (neither of which is accused of infringement) are not sufficient to distinguish the Accused Products. Those symbols were visible to consumers in Mr. Poret's survey and still more than 26% (on average) of consumers thought the Accused Products were put out by or with the approval of adidas.

      The Accused Products are extremely similar to core adidas products, namely activewear. Thus, when viewed in the initial-interest and post-sale marketplace context, consumers are likely to mistakenly believe the Thom Browne apparel is put out by or with the approval of adidas. When, as here, the plaintiff does not assert confusion at the point of sale, direct competition in channels of trade is substantially less important. Nevertheless, adidas will offer evidence that its products appear on the internet and in several of the same retail stores as the Accused Products, including higher-end retailers like Nordstrom and Saks.

      The Poret survey is admissible as evidence of actual confusion. In addition, adidas will introduce at trial examples of consumers reacting to images of the Accused Products online, including on social media, with references to "adidas," reflecting actual association and, in some cases, actual confusion. Given Thom Browne's extremely limited marketing of the Accused Products, these instances will be highly persuasive to a jury.

Evidence of Thom Browne's bad faith comes from Thom Browne's own documents and witnesses, which make clear that (a) the four-stripe design was adopted with full knowledge of adidas's Three-Stripe Mark and multiple trademark registrations therefor, and without any advice from trademark counsel as to its propriety; (b) Thom Browne expanded use of the Grosgrain mark into placements – running down sleeves or pants – that closely mimic the most iconic iterations of the Three-Stripe Mark; (c) Thom Browne expanded use of its stripe marks into athletic apparel in direct competition with adidas; and (d) did so extensively *after* adidas first became aware of and objected to Thom Browne's stripe marks in 2018.

Issues of product quality and "sophistication" of consumers are less relevant in cases involving initial-interest or post-sale confusion, because the jury is not considering marketplace conditions in which consumers can touch or look closely at product and make careful assessments. Nevertheless, adidas will introduce evidence showing that the parties' products are made of similar material and share similar quality. adidas also will present testimony and documents concerning relevant consumers' demographic and psychographic profiles, including how they are likely to encounter the Accused Products in the initial-interest and post-sale context.

As discussed in Section 5, adidas seeks injunctive relief to remedy the trademark infringement and unfair competition by Thom Browne. adidas also seeks monetary relief from the jury in the form of damages – calculated as a reasonable royalty – and disgorgement of profits. adidas's expert witness John Plumpe will testify concerning the appropriate damages and profits calculations.

adidas's dilution claims require adidas to show that the Three-Stripe Mark is famous and that Thom Browne's use of its stripe marks (in the manner reflected on the Accused Products) is

likely to dilute the distinctiveness of the Three-Stripe Mark. 15 U.S.C. §1125(c). As noted above, adidas's Three-Stripe Mark is famous, based on longstanding extensive use throughout the United States. Thom Browne's survey purports to test fame but does not follow generally accepted methodology and instead merely measured secondary meaning among the wrong universe. If the survey is not excluded on *Daubert* grounds, adidas will present expert testimony in rebuttal from Dr. David Neal.

Thom Browne's sale of the Accused Products is likely to cause dilution by blurring because the adidas brand "comes to mind" when consumers encounter the Accused Products, and because consumers draw an *association* between the Three-Stripe Mark and the stripe designs on the Accused Products. adidas's evidence that such an association exists comes in three forms: (1) the evidence of actual association online, as discussed above; (2) expert testimony from Dr. Erich Joachimsthaler; and (3) the survey evidence from Hal Poret (because consumers who mistakenly believe the Accused Products are put out by adidas necessarily have made an association between the parties' marks).

The primary remedy for trademark dilution is a permanent injunction. In cases such as this, however, where Thom Browne willfully intended to trade on the recognition of the Three-Stripe Mark, both damages and profits are recoverable. 15 U.S.C. § 1125(c)(5). Thus, Mr. Plumpe's testimony concerning damages and profits will be equally applicable to adidas's dilution claim.

Thom Browne asserts a single affirmative defense – laches – and adidas contends that it only applies to the 4-Bars design because Thom Browne never asserted it as to the Grosgrain design prior to summary judgment. To prevail at trial, Thom Browne must show that between Spring 2010 (when it first offered one of the Accused Products for sale) and May 2012 (the

PAGE 10 - JOINT PRETRIAL CONSENT ORDER

relevant laches date, based on New York's six-year statute of limitations), (a) adidas knew or should have known that it had a provable infringement claim against Thom Browne that was more than *de minimis*; (b) adidas's delay was unreasonable; and (c) as a result of adidas's failure to object during that 2-year window, Thom Browne suffered material economic or evidentiary prejudice. adidas will present evidence that, *inter alia*, (a) it was unaware of any Accused Products during the 2-year window; (b) adidas had previously settled its dispute with Thom Browne over a three-stripe design and trusted Thom Browne to avoid further infringement; (c) Thom Browne's sales of Accused Products during the 2-year period were miniscule and the products were not advertised; (d) Thom Browne progressively encroached on adidas's rights by greatly expanding the number and type of Accused Products sold in direct competition with adidas; and (e) adidas has a robust trademark enforcement program and thus neither had an incentive to sleep on its rights nor did adidas fail in its duty to police the market for infringements. adidas will also show that Thom Browne does not have evidence supporting allegations of prejudice resulting from adidas's purported delay. Finally, even if the Court were to conclude that Thom Browne satisfied the essential elements of a laches defense, adidas will ask this Court to refrain from applying the doctrine as a matter of equity, both to prevent further confusion among consumers and because of Thom Browne's unclean hands.

      **B. Thom Browne's Contentions**

      In this matter, adidas asserts rights under both registered and unregistered marks for its "Three-Stripe Mark." adidas has not defined its "Three-Stripe Mark." It wishes the Court and the jury to ignore, however, that it has the burden to show it has trademark rights in any unregistered mark is it asserting, and that its registrations only go so far as to protect uses that may cause a likelihood of confusion with the presentation of the mark as shown in its registrations, and for

PAGE 11 - JOINT PRETRIAL CONSENT ORDER

the goods recited therein.

For its unregistered marks, adidas will not be able to prove by a preponderance of the evidence that any particular configuration of three stripes in which it claims rights has acquired secondary meaning. In other words, adidas will not be able to provide evidence that consumers view all of adidas' alleged uses of three stripes as an adidas trademark or trademarks.

For its registered marks, adidas will need to analyze each mark individually comparing the Accused Products bearing Thom Browne's signature four-bar design ("Four Bar Signature") and grosgrain design ("Grosgrain Signature") to each individual registration in order to prove likelihood of confusion under the Lanham Act. adidas cannot conflate its registrations into one omnibus, purported "Three Stripe Mark" to shortcut the requisite analysis under the Lanham Act.

Thom Browne will present evidence that rebuts and refutes adidas' evidence of infringement under each of the *Polaroid* factors listed above.

Thom Browne will present evidence that fact and specialized witness testimony regarding the use of stripes, including three stripes and other numbers of stripes, generally throughout history and even today as a common design element. Thom Browne will also present testimony that the crowded field of use of stripes on clothing and footwear necessitates that consumers be more discerning when evaluating products bearing stripe marks—including Thom Browne's products—and also narrows the scope of trademark rights that adidas claims it owns.

Thom Browne will present evidence that since adidas demanded it cease using three bars in 2007, it has continuously, consistently and very publicly used its Four-Bar and Grosgrain Signatures. While the number of stripes or bars provides a baseline and significant dissimilarity between the designs, a more wholesale view of the circumstances and effect of Thom Browne's Accused Signatures highlights the divide between the marks. Thom Browne will present

evidence that adidas and Thom Browne operate in different markets, serving different customers, and offer their products at strikingly different price points. The evidence of both parties will demonstrate that Thom Browne has always operated in the high-end luxury end of the market, while adidas does not, and Thom Browne has sold clothing that adidas labels as "activewear" for more than 15 years.

Thom Browne will also show that while adidas was threatened by its sport coat in 2006, Thom Browne has never considered adidas a direct competitor. To the contrary, even the more casual pieces across Thom Browne's brand elicit a tailored, polished look and quality unlike traditional activewear—an elevated look and quality for which Thom Browne is recognized. Thom Browne will also highlight the absence of admissible evidence by adidas of actual confusion among consumers despite both brands' "activewear" bearing stripes being on the market since at least 2009, sometimes even at the same retailer. The evidence of both parties will also show that Thom Browne adopted its Four-Bar design in good faith in 2008 to avoid litigation with adidas, and that Thom Browne's CEO at the time, Tom Becker, called adidas's in-house counsel Vanessa Backman several times to let her know about the change to 4 bars, but Ms. Backman never returned his calls. The evidence Thom Browne will present will also demonstrate that after this four-bar adoption, Thom Browne consistently featured apparel bearing the Four-Bar and Grosgrain Signatures in its marketing, investing in these designs as brand identifiers for Thom Browne apparel without any desire for its products to be mistaken as adidas' products.

As adidas notes above, it is required to show that its Three-Stripe Mark is famous to meet the requisite elements of its dilution claim. Thom Browne will present evidence from its survey witness Brian Sowers demonstrating that survey participants' recognition of adidas' Three-Stripe

Mark in both vertical and horizontal orientations fell well below the threshold level of recognition required to find a mark famous. In addition to this survey evidence, Thom Browne will rebut adidas' evidence of dilution by blurring by specialized testimony from Dr. Joel Steckel of the lack of evidence of adidas' brand associations being weakened and lack of evidence that Thom Browne's associations will become attached to adidas. Further, given that adidas claims that its products are competitive with Thom Browne's products, adidas should not be able to pursue its claim of dilution before the jury as a matter of law.

Thom Browne's specialized witness Basil Imburgia will testify concerning the appropriate damages and profits calculations, including the reasonableness or lack thereof, of adidas' witness John Plumpe's damages calculations.

Thom Browne contends all of adidas' claims are barred by the equitable doctrine of laches. To successfully defend against adidas' infringement, dilution and unfair competition claims, Thom Browne will set forth evidence that (1) adidas knew or should have known of Thom Browne's use of both the Four-Bar Signature and Grosgrain Signature dating back to 2009; (2) that adidas inexcusably delayed in taking action for Thom Browne for over a decade until 2018 despite finding Thom Browne a threat in 2006 when it was featuring a stripe design on tailored pieces; (3) and that Thom Browne suffered both evidentiary and economic prejudice by adidas' failure to act—by investing, establishing and building the Four-Bar and Grosgrain Signatures as brand identifiers across Thom Browne collections.

adidas claims it did not know about these signature designs and was under no imperative to do so until 2018. But Thom Browne will present evidence, *inter alia*¸ that adidas knew or should have known about: (1) the Four-Bar Signature when its then-CEO, Tom Becker, attempted to reach out to adidas' counsel to notify her of the switch from three to four bars after

PAGE 14 - JOINT PRETRIAL CONSENT ORDER

adidas had demanded Thom Browne cease using three stripes in 2007; (2) Thom Browne's use of its Grosgrain Signature when it demanded Thom Browne cease using three bars on its apparel because Thom Browne featured the Grosgrain Signature on multiple items available for purchase in its store in Tribeca at that time (a store which adidas acknowledges was Thom Browne's "one physical retail store" at that time); (3) Thom Browne's use of the Four-Bar Signature since it was adidas's practice to monitor or keep entities on its radar that it had accused of infringement before; (4) Thom Browne's use of the Accused Signatures since they were prominently featured in Thom Browne's fashion shows by Fall 2008 through 2012 (and to present day) and adidas's practice was to attend fashion weeks, including where Thom Browne showed; (5) the Accused Signatures because since at least as early as 2009, Thom Browne sold products featuring these signatures in prominent chain department stores, such as Nordstrom, where adidas also featured its clothing; (6) the Accused Signatures because beginning in 2010, Thom Browne sold what adidas defines as "activewear" featuring the Four-Bar Signature at its Tribeca Store, again the only Thom Browne retail location in the United States until 2018; and (7) the Grosgrain Signature because adidas routinely utilizes watch services, and Thom Browne filed an application for the Grosgrain Signature with the USPTO in November 2012. This evidence will establish that adidas should have known about a provable infringement claim against Thom Browne on or before 2012, making its delay until 2018 presumptively unreasonable. *Excelled Sheepskin & Leather Coat Corp. v. Oregon Brewing Co.*, 897 F.3d 413, 419 (2d Cir. 2018). Thom Browne will also prove that it has suffered prejudice as a result of adidas's inexcusable delay, in terms of both evidentiary prejudice (lost documents, faded memories, etc.) and economic prejudice (Thom Browne grew its business, including outerwear, Women's collection and Children's collection, and used the Four Bar and Grosgrain Signatures in connection with

PAGE 15 - JOINT PRETRIAL CONSENT ORDER

this growth).

adidas counters that Thom Browne encroached on its rights by "greatly expanding the number and type of Accused Products sold in direct competition with adidas." Thom Browne will present evidence that there was no such expansion. Specifically, Thom Browne will present evidence that adidas considered Thom Browne to be a competitive threat even in 2006 when Thom Browne was using three-bars on tailored sport jackets, among other items. Thom Browne will present evidence that adidas made that determination in 2006 after being informed of a single fashion publication featuring Thom Browne and its use of stripes, and that in the period since, Thom Browne's Four-Bar and Grosgrain Signatures have been prominently featured in increased press, including fashion periodicals and fashion shows, as the brand has grown. Thom Browne will present evidence that its collections have had a sporting sensibility from inception, and have included items that adidas characterizes as "activewear" since prior to 2007. Thom Browne will also establish that the evidence adidas relies on to support its expansion story *post-dates* the laches period and/or describes clothing that is not activewear, but rather, Thom Browne's tailored suiting of sports-players off the field or court. In sum, Thom Browne will establish that adidas' theory of progressive encroachment is untenable in the face of evidence both parties have propounded in this litigation.

Thom Browne's evidence will show that fairness requires a finding for Thom Browne on both the equitable doctrine of laches and on adidas' defense of progressive encroachment.

5. **Statement of Relief Sought**

adidas seeks monetary relief from the jury for its claims in the form of: (a) damages, calculated according to a reasonable royalty, in the amount of $867,225 for the period December 16, 2015-November 30, 2022; (b) disgorgement of Thom Browne's profits on sales of the

PAGE 16 - JOINT PRETRIAL CONSENT ORDER

Accused Products, totaling $7,011,961 for the period December 16, 2015-November 30, 2022; and (c) punitive damages.

Additionally, adidas seeks monetary relief from the Court in the form of: (a) a trebling of the jury's damages award, pursuant to 15.U.S.C. § 1117(a); (b) adidas's reasonable attorneys' fees and costs, pursuant to 15.U.S.C. § 1117(a) and state law; and (c) prejudgment and post-judgment interest on all monetary awards.

adidas also seeks permanent injunctive relief precluding Thom Browne from advertising, marketing, promoting, selling, or offering to sell any of the Accused Products or any other activewear products bearing the confusingly similar four-stripe design.

### 6. Witness Lists

adidas's witness list is attached as Exhibit 1.

Thom Browne's witness list is attached as Exhibit 2.

### 7. Exhibit Lists

adidas's exhibit list, along with Thom Browne's particularized objections thereto, is attached as Exhibit 3. Thom Browne's exhibit list, along with adidas's particularized objections thereto, is attached as Exhibit 4.

### 8. Estimated Length of Trial

The parties estimate this jury trial will take approximately nine (9) trial days.

Respectfully submitted:

| | |
|---|---|
| By: /s/ R. Charles Henn Jr.<br>R. Charles Henn Jr.<br>chenn@kilpatricktownsend.com<br>H. Forrest Flemming<br>fflemming@kilpatricktownsend.com<br>**KILPATRICK TOWNSEND & STOCKTON LLP**<br>1114 Avenue of the Americas<br>New York, NY 10036<br>Telephone: (212) 775-8700<br>Facsimile: (212) 775-8800<br><br>Attorneys for adidas<br><br>Dated:  December 27, 2022 | By: /s/ Robert T. Maldonado<br>Robert T. Maldonado<br>rmaldonado@wolfgreenfield.com<br>Tonia A. Sayour<br>tsayour@wolfgreenfield.com<br>**WOLF, GREENFIELD & SACKS, P.C.**<br>605 Third Avenue, 25th Floor<br>New York, NY 10158<br>Telephone: (212) 697-7890<br>Facsimile: (617) 646-8646<br><br>Attorneys for Thom Browne<br><br>Dated:  December 27, 2022 |

The Court has reviewed the Joint Pretrial Consent Order and finds that there is good cause to enter it.  Accordingly, **IT IS SO ORDERED.**

DATED:  _____, 2022

_____
Honorable Jed S. Rakoff
United States District Judge